[Cite as *Cleveland v. Grunt*, 2018-Ohio-4109.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106381**

## CITY OF CLEVELAND

PLAINTIFF-APPELLEE

vs.

## JAMES GRUNT, JR.

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cleveland Municipal Court Housing Division
Case No. 2016 CRB 022974

**BEFORE:** Blackmon, J., E.A., Gallagher, A.J., and Jones, J.

**RELEASED AND JOURNALIZED:** October 11, 2018

**ATTORNEYS FOR APPELLANT**

Mark A. Stanton
Cuyahoga County Public Defender

By: Frank Cavallo
Assistant Public Defender
310 Lakeside Avenue, Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Barbara A. Langhenry
City of Cleveland Law Director

By: Kortney Mosley
City of Cleveland Law Department
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114

PATRICIA ANN BLACKMON, J.:

{¶1} James Grunt ("Grunt") appeals the Cleveland Municipal Court Housing Division's imposition of community control sanctions for failure to comply with an order of the Cleveland Building Department and assigns the following error for our review:

I. The trial court imposed an improper condition on appellant's community control by ordering him to submit to a search of the interior of his home in violation of his rights under the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution and Article 1, Sections 10 & 19 of the Ohio Constitution.

{¶2} Having reviewed the record and pertinent law, we affirm. The apposite facts follow.

{¶3} On December 5, 2016, the city of Cleveland ("Cleveland") filed this case against Grunt alleging eight exterior violations of Cleveland's housing code relating to Grunt's property located at 4894 W. 13th Street. On July 25, 2017, Grunt pled no contest[1] to failure to comply with a housing code violation notice for 42 days. This court has interpreted Cleveland Codified Ordinances 367.99 to mean that "each day of noncompliance constitutes a separate offense." *Cleveland v. Lucas*, 8th Dist. Cuyahoga No. 105521, 2018-Ohio-167, ¶ 6. On September 12, 2017, the court sentenced Grunt to

---

[1] We note that Grunt's plea hearing transcript is not part of the record in this case. "[A]bsent a transcript or alternative record under App.R. 9(C) or 9(D), we must presume regularity in the proceedings below." *State v. Rice*, 8th Dist. Cuyahoga No. 95100, 2011-Ohio-1929, ¶ 11.

two years of community control sanctions ("CCS"), to include 60 hours of court community service and an interior inspection of the property.

{¶4} Grunt appealed this order, and on April 30, 2018, this court dismissed the appeal for lack of a final order, because the housing court imposed a "blanket" sentence on one violation despite Grunt being charged with 42 counts. On June 6, 2018, the court resentenced Grunt to the following for each of the 42 counts, to be served concurrently: three years of CCS, including 120 hours of court community service and an interior inspection of the property. In increasing Grunt's sentence, the court found that "the situation's actually gotten worse since last Fall." On June 18, 2018, this court granted Grunt's motion to reinstate his appeal and stayed the interior inspection order.

{¶5} Appellate courts review a trial court's imposition of CCS under an abuse of discretion standard. *State v. Talty*, 109 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, ¶ 10. Pursuant to R.C. 2929.25(A)(1)(a), "in sentencing an offender for a misdemeanor, * * * the sentencing court may * * * impose * * * one or more community control sanctions" including residential, non-residential, and financial sanctions. Additionally, "[t]he court may impose any other conditions of release under a community control sanction that the court considers appropriate." R.C. 2929.27(C), which governs non-residential sanctions, gives courts further guidance regarding CCS conditions: "the court imposing a sentence for a misdemeanor * * * may impose any other sanction that is intended to discourage the offender or other persons from committing a

similar offense if the sanction is reasonably related to the overriding purposes and principles of misdemeanor sentencing."

{¶6} R.C. 2929.21(A) lists the overriding purposes of misdemeanor sentencing as "to protect the public from future crime by the offender and others and to punish the offender." Courts use a three-part test to determine whether a condition of CCS furthers the statutory goals of misdemeanor sentencing: "courts should consider whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of" CCS.[2] *State v. Jones*, 49 Ohio St.3d 51, 53, 550 N.E.2d 469 (1990).

{¶7} In the case at hand, Grunt argues that an order requiring him to submit to an interior inspection of the property does not satisfy any of these three factors, because the underlying violation of which he was convicted stems "from minor exterior maintenance of the home and structural conditions of the garage." First, Grunt argues that he was in the process of repairing the violations when he was sentenced; therefore, the court had "no reason" to order an additional inspection. Second, Grunt argues that the interior inspection was too "broad, * * * effectively declaring that the presence of any violation on the property created grounds for * * * a full inter[ior] inspection * * *."

---

[2] *State v. Jones* applied to probation under former R.C. 2951.02; however, Ohio courts have applied this test to CCS under the current statutory scheme. *See, e.g., State v. Cooper*, 2016-Ohio-8048, 75 N.E. 3d 805, ¶ 31 (8th Dist.).

Third, Grunt argues that "no violations were ever alleged to be present within the home"; therefore, an interior inspection "bears no relationship to" exterior violations.

{¶8} Grunt also argues that the court-mandated interior inspection of his property violates his constitutional rights. Specifically, Grunt argues that this inspection amounts to an unreasonable "warrantless administrative search." Grunt cites to Cleveland Codified Ordinances 367.03, which states that the city "may enter at reasonable times, * * * any dwelling * * * in the City to perform any duty imposed [under the] Housing Code * * *, provided that permission to enter is obtained from the * * * owner * * * . If such permission is refused or is otherwise unobtainable, a search warrant shall be obtained * * *." Grunt argues that no permission was given, no warrant was issued, and no probable cause established; therefore, the ordered interior inspection violates his constitutional private property rights.

{¶9} Cleveland, on the other hand, argues that the interior inspection is a proper condition of CCS, because the violations of which Grunt was convicted call into question "the property's structural integrity," which satisfies the *Jones* factors. These violations include exterior painting, window and screen replacement, driveway repairs, roof material replacement, roof and siding repairs, and the condition of the downspouts. Cleveland also argues that Grunt's constitutional arguments are misplaced, because the interior inspection was ordered as a condition of CCS and not as a warrantless search.

**{¶10}** Cleveland presented evidence during the resentencing hearing that the house has been unoccupied for the past eight years and Grunt's repairs to cure the violations are "nowhere near complete." For example, according to the housing court specialist who prepared Grunt's presentence investigation report, the violations to the driveway were no longer visible "because of the junk and debris that's accumulated now." Additionally, on October 16, 2017, the garage was condemned. Furthermore, Grunt has been cited for violations to this same property in 2000, 2002, 2008, 2014, 2015, and 2016.

**{¶11}** The housing court specialist testified that "it doesn't appear that Mr. Grunt understands the severity of the [violations] and the consequences of his actions. I get numerous complaints from [the] Ward 13 Councilman * * *. The neighbors in the area are just tired of seeing it vacant and in disrepair."

**{¶12}** At the resentencing hearing the court found the following:

> In reviewing the pre-sentence report, there's a number of things. You know, the fact that a property is vacant in and of itself is not a code violation. As long as a property is appropriately maintained, it does not — occupancy is not a code requirement. But the rest of the conditions that I'm seeing here are indicating that there's some additional issues with this property besides the significant ones on the exterior.

> I can see that Mr. Grunt has done some painting * * *. So — I mean, you've done some of the repair. You pulled a permit for the garage, even though the garage is now condemned, but it does appear that there's even more materials that are at the property.

**{¶13}** Grunt explained that the tarp in the driveway was covering "wood, lumber I guess, and stuff that was in the garage."

**{¶14}** The court continued:

[T]remendous amount of materials in the yard, in the driveway, and so in essence it, you know, there's even more materials that are out and visible now. And initially, when we were here last fall, you know, the concern that I had was that, you know, I've seen a lot of yards that look like this, and typically this is a — an indication that — when you don't have some place to store things on the inside, it's because it's completely full, and we're dealing with a hoarding situation.

And that's to me what this looked like last Fall and it continues to look like it, and you know, the photographs again of the interior, it appears multiple places where the curtains are pushing up against the windows from the inside. * * *

I can say this that, you know, were the city to bring this to me as a search warrant request, you know, alleging that they believe there was a hoarding situation, I would sign the search warrant for this based on everything that I see here, which is why I ordered it initially as part of the community control, that that was one of the conditions is to permit an interior inspection.

So taking this into account, the situation's actually gotten worse since last Fall. I am going — to consider as well that there's been six prior convictions for this property.

**{¶15}** Neither party to this appeal cites Ohio law analyzing the legality of a property inspection as a condition of CCS imposed for failing to repair housing code violations. First, we analyze the facts under the *Jones* test, and second, we determine whether ordering the inspection violates Grunt's constitutional rights.

**{¶16}** We find that inspecting the interior of Grunt's property for violations is related to rehabilitating Grunt, who has been cited for continuing exterior violations

regarding this property since 2000. Furthermore, we find that there is "some relationship" between the condition of the interior of the property and the condition of the exterior of the property. Finally, we find that inspecting the property is reasonably related to failure to comply with a notice of housing violations. Under *Jones*, the interior inspection of the property as a condition of Grunt's CCS furthers the statutory goals of misdemeanor sentencing.

{¶17} Turning to the constitutional issue, we find no cases in Ohio directly on point, i.e., discussing the constitutionality of ordering a property inspection as a condition of CCS. However, we find guidance in R.C. 2951.02, which authorizes warrantless searches during an offender's misdemeanor CCS under certain circumstances. Subsection (A) states, in part, as follows:

> During the period of a misdemeanor offender's community control sanction * * *, authorized probation officers who are engaged within the scope of their supervisory duties or responsibilities may search, with or without a warrant * * * real property in which the offender has a right, title, or interest * * * if the probation officers have reasonable grounds to believe that the offender is not abiding by the law or otherwise is not complying with the conditions of the misdemeanor offender's community control sanction * * *.

{¶18} In *State v. Benton*, 82 Ohio St.3d 316, 322, 695 N.E.2d 757 (1998), the Ohio Supreme Court held that "a warrantless search performed pursuant to a condition of parole requiring a parolee to submit to random searches of his or her person, motor vehicle, or place of residence by a parole officer at any time is constitutional." Although *Benton* applied to parole, rather than CCS, the Ohio Supreme Court has held that there is

"no material difference between probationers and parolees in the context of constitutional guarantees * * *." *Ohio v. Roberts*, 32 Ohio St.3d 225, 229, 513 N.E.2d 720 (1987). *See also Samson v. California*, 547 U.S. 843, 851, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006) ("parolees * * * have severely diminished expectations of privacy by virtue of their status alone").

{¶19} The cases cited involve motions to suppress and warrantless searches. In the case at hand, we are dealing with an ordered property inspection that has not taken place. In drawing an analogy between an inspection and a search, and between probation officers and housing inspectors, we find ordering an interior inspection of Grunt's property as a condition of his CCS is constitutional. *See generally Camara v. Municipal Court of San Francisco,* 387 U.S. 523, 530, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) ("a routine inspection of the physical condition of private property is a less hostile intrusion than the typical policeman's search for the fruits and instrumentalities of crime"). *Compare Cleveland v. Wilson*, 8th Dist. Cuyahoga Nos. 44703 and 44704, 1983 Ohio App. LEXIS 14712 (March 17, 1983) (" warrantless searches of commercial premises have been upheld in some closely regulated industries * * * subject to periodic inspection pursuant to regulatory schemes").

{¶20} In the instant case, the court noted the "reasonable grounds" to believe that Grunt's property may have interior violations are that the property has been vacant for eight years; the utilities have been shut off for years; the only heat comes from space

heaters; Grunt's habitual failure to repair the exterior of the house; and the telltale signs of hoarding, including storing items in the yard and on the driveway allegedly due to lack of empty space inside the house.

{¶21} Accordingly, under the facts of this case, we find no error in the imposition of an interior inspection of Grunt's property as a condition of his CCS, and his sole assigned error is overruled.

{¶22} Conviction affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cleveland Municipal Court Housing Division to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of

the Rules of Appellate Procedure.


_____
PATRICIA ANN BLACKMON,   JUDGE

EILEEN A. GALLAGHER, A.J., and
LARRY A. JONES, SR., J., CONCUR