[Cite as *Cleveland v. Sopjack*, 2024-Ohio-6018.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF CLEVELAND,                               :

      Plaintiff-Appellee,                  :

                                  113697

      v.                                   :

ROBIN SOPJACK,                                   :

      Defendant-Appellant.                 :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** DISMISSED IN PART, REVERSED IN PART, AND REMANDED
**RELEASED AND JOURNALIZED:** December 26, 2024

---

Criminal Appeal from the Cleveland Municipal Court
Housing Division
Case No. 2021-CRB-004646

---

### *Appearances:*

Mark D. Griffin, City of Cleveland Law Director, and Michael T. Mahoney, Assistant Law Director, *for appellee*.

Cullen Sweeney, Cuyahoga County Public Defender, and John T. Martin, Assistant Public Defender, *for appellant*.

ANITA LASTER MAYS, J.:

{¶ 1} Defendant-appellant Robin Sopjack ("Sopjack") appeals the imposition of community-control sanctions ("CCS") by the Cleveland Municipal Housing Court for failure to comply with City of Cleveland (the "city") housing code

violations. Sopjack challenges the housing court's CCS conditions requiring an interior inspection for her residence that is not the locus of the offense and the production of certain financial information.

{¶ 2} We dismiss the appeal in part, reverse the judgment in part, and remand the case for further proceedings pursuant to this opinion.

**Background and Facts**

{¶ 3} On December 30, 2019, City Housing Inspector Barkas ("Barkas") inspected a vacant residential property on East 61st Street in Cleveland, Ohio (the "Property") owned by Sopjack. On January 24, 2020, Barkas issued a notice of violation of the following Cleveland Codified Ordinances ("CCO") with a repair deadline of February 23, 2020.

1. CCO 369.19: the garage door is broken and [in] need of repair.

2. CCO 369.19: the garage wood trim is deteriorated, broken and in need of painting.

3. CCO 369.15: the garage is in need of painting.

4. CCO 3117.03(h): the swimming pool is located less than 10 feet from a property line.

5. CCO 3117.03(g): the below grade swimming pool is not provided with a proper safety fence. (4' high at least 10' from edge of pool).

6. CCO 3101.10(c), 369.15: the exterior [tuck pointing needed] stairway system contains deteriorated, loose, broken or missing members.

7. CCO 3101.10(c).369.15(a): the exterior wall siding is loose and/or deteriorated.

8. CCO 3101.10(c).369.15: the exterior walls are not maintained weather resistant. (Paint)

{¶ 4} On May 10, 2021, a complaint was filed citing Sopjack for three counts of failure to comply with an order of the building department under CCO 3103.25(e), each a first-degree misdemeanor.

> (e) No person shall fail to comply with any stop work order issued under the provisions of this Building Code; nor refuse, neglect or fail to comply with a notice to repair, rehabilitate or demolish a building or other structure declared to be unsafe under the provisions of this Building Code; nor maintain a use or occupancy prohibited by this Building Code; nor refuse, neglect or fail to maintain stair enclosures, stairways, fire escapes, exit passageways or other required means of egress in a safe and usable condition as required by OBC or this Building Code.

*Id.*

{¶ 5} On September 20, 2023, Sopjack pleaded no contest. Sopjack explained that the Property was her childhood home and her parents had taken good care of it over the years. Sopjack's daughter and grandchildren moved into the Property after Sopjack's parents moved out. Sopjack planned to move into the Property after her daughter moved out because it was nicer than her personal residence (the "Residence"). In 2018, her daughter moved out, Sopjack accepted ownership, and the house was vandalized before she could move in leaving it "unlivable." The furnace, hot water tank, plumbing and electrical systems, central air unit, driveway gates, and garage door were removed.

{¶ 6} Concurrently, Sopjack's social security income benefits ("SSI") received due to mental conditions that made her unable to function and think normally were promptly terminated. Sopjack was not aware that owning both the Property and her Residence disqualified her for benefits. Overwhelmed, she stated

her only choice would be to sell the Property, but SSI told her it would have to be appraised and sold at value. Sopjack's counsel advised the housing court that due to the mitigating circumstances, he referred the matter to one of the firm's social workers, and requested six weeks to prepare a report for the housing court's review prior to sentencing.

{¶ 7} On November 2, 2023, Sopjack was sentenced to two years of CCS and advised that failure to comply would result in a maximum sentence of 18 months in jail and a fine of $3,000. Journal Entry Date is Nov. 17, 2023, journalized Nov. 22, 2023 ("Sentencing Order").

{¶ 8} The list of properties attached to the Sentencing Order contains the Property and the Residence. The entry provides in relevant part."

> Defendant is verbally ordered not to sell, gift, or *transfer the two (2) properties* it owns within the City of Cleveland while on community control without approval of the Court, which also applies to all other business entities and limited liability companies owned by the Defendant. [See attached property list].
>
> . . .
>
> 7. Defendant is ordered to clean *all of the properties* owned within the City of Cleveland and keep them free from all junk, debris, and dumping, specifically the cited property located at . . . E. 61st Street . . . [See attached property list].
>
> 8. Defendant is ordered to cut all grass and remove any shrubbery or overgrowth of shrubbery from *any of the properties* owned within the City of Cleveland. [See attached property list.]

(Emphasis in original.) *Id*. at p. 2.

**{¶ 9}** Sopjack was ordered to allow an interior and exterior inspection of the Property, and the housing court reserved the right to modify the Sentencing Order upon completion of the inspection. The order further provided:

> 13. Defendant is ordered to submit *financial documentation including six (6) months of bank statements and 2021/2022 tax documents* to Housing Court Specialist . . . prior to the next hearing.
>
> 14. *Upon review of the financial documentation, the Court will determine at the next hearing if the Defendant is indigent.*
>
> 15. Defendant ordered to allow Housing Court Specialist . . . to take *photos of the residential property located at . . . .*
>
> l6. Defendant is ordered to submit a maintenance and repair plan to Housing Court Specialist . . . every 30 days, beginning on December 1, 2023. The maintenance and repair plan shall include dates when the property manager drives by *owned properties* to inspect so that no violation can occur, and when vacant properties are secured, when properties are scheduled for renovations, inspections, and/or sale, and attach permits when pulled. [See attached property list.]

*Id.* at p. 2-3.[1]

**{¶ 10}** Sopjack was also ordered to:

> Abide by the orders of community control and not reoffend R.C. 2929.21;
>
> Comply with the Court's general probation requirements outlined in R.C. 2929.25(2)(a)-(c) and Housing Div. Loc. R. 2.18, a copy of which is attached to this Sentencing Judgement Entry and Order, which includes keeping all properties owned by Defendant, located within the City of Cleveland and Village of Bratenahl in good repair and in compliance with local codes. . . .

---

[1] The court references Housing Div. Loc.R. 2.18 while the parties cite the rule as Loc.R. 2(S) as reflected in the 2022 and 2024 versions of the rules.

{¶ 11} Finally, Sopjack was warned that the housing court could impose CCS for up to five years, impose more restrictive CCS sanctions per R.C. 2929.25-28 including an increase in financial sanctions, impose a definite jail term up to 18 months, and a maximum fine of $3,000.

{¶ 12} In addition to the list of Sopjack's two properties, attached to the Sentencing Order was a copy of the Property violation, a document explaining the definition and purpose of CCS, and an appendix that sets forth the general CCS requirements of the housing court under the housing division's Loc.R. 2.18. The requirements included providing a list of all properties the defendant owned or controlled, keep all owned properties in good repair, and "[t]he offender must permit any Court representative or City or State inspector to inspect any of the offender's properties on such terms as the Court may order."

{¶ 13} At a January 31, 2024 status hearing, the housing specialist advised the housing court that a general external clean-up was required for the Property and an external inspection of Sopjack's Residence revealed a need for repair. A condemnation notice was issued for the Property. Asked whether she still owned the Property, Sopjack advised the housing court she had been told she was not allowed to sell it, which was "holding everything back."

{¶ 14} The housing court specialist reminded the housing court that Sopjack "has no income at this time due to her Social Security benefits were terminated due to her having two properties within her name." Sopjack was noncompliant with payment of the ongoing court costs due to the lack of income and had submitted

some financial documentation on December 8, 2023, that did "not appear to be any form of bank statements or tax documentation." As for bank statements, Sopjack said that she had $30 in a savings account to try to keep the account open for when she was able to have her disability reinstated.

{¶ 15} Sopjack had partially complied with the CCS condition that she turn in six months of bank statements and tax returns. The housing court reiterated the need for the financial documents and said they were needed "to get documents ready for any kind of social services or services she needs from the City of Cleveland." "[B]ut then I also want to go on record in determining because, contrary to belief, we have to have a hearing on indigency . . . according to the rule." Defense counsel explained that the financial documents submitted a month earlier were issued by the Social Security Administration ("SSA") and were provided "to show there had been no benefits or income since 2017."

{¶ 16} The January 31, 2024 status hearing order ("Status Order") provided in part that a notice of condemnation was issued as the result of the Property inspection.

> The Court hereby issues the following clarifying and additional orders based on the testimony given:
>
> *Terms of Community Control*:
>
> 1) *The terms of community control are active and are set to expire on November 2, 2025.*
>
> 2) Defendant is informed community control conditions include the duties to:
>
> - Abide by the laws of R.C. 2929.25(D)(2)(a)-(c);

- Comply with the Court's general probation requirements outlined in Housing Div. Loc. R. 2.18, a copy of which is attached to this entry, including keeping all properties owned by Defendant and located with the City of Cleveland and Village of Bratenahl in good repair and in compliance with local codes; and

- Report to and cooperate with his assigned community control officer.

(Emphasis in original.) Status Order, p. 1 (Dated Jan. 1, 2024, and journalized on Feb. 2, 2024.) ("Status Order").

{¶ 17} In addition,

a. *ALL PRIOR ORDERS OF THE COURT TO REMAIN IN FULL FORCE AND EFFECT.*

b. *Defendant is ordered to allow Inspector Michael Shockley or an inspector from the City of Cleveland, Department of Building and Housing, to do an interior and exterior inspection of Defendant's [Residence] . . . including any garages or sheds prior to the next hearing.*

c. *Defendant is ordered to submit financial documentation including six (6) months of bank statements and 2021/2022 tax documents to Housing Court Specialist Ebony Butler prior to the next hearing to allow the Court to determine if Defendant is indigent.*

d. *Defendant is ordered to remain in communication with Housing Court Specialist Ebony Butler, providing all required documents and information timely while under this Court's supervision.*

(Emphasis in original.) *Id*. at p. 1-2.

{¶ 18} Finally, the order warned that a failure to substantially comply with the cited conditions may result in extending CCS for up to five years in total, imposing more restrictive CCS terms under R.C. 2929.25-28 including increased financial sanctions, and imposing a definite jail term up to 18 months and a maximum fine of $3,000.

{¶ 19} Sopjack appeals.

## Assignments of Error

{¶ 20} Sopjack assigns the following errors for appeal:

I. The trial court erred when it amended the conditions of community control sanctions to include mandatory inspection of Sopjack's home which is not the locus of the offense conduct.

II. The trial court erred when it amended the conditions of the community control sanctions to include mandatory financial disclosures.

## Discussion

{¶ 21} We address the assigned errors out of order.

### Financial documents.

{¶ 22} Sopjack's second assignment of error challenges the imposition of the financial conditions. The city contends the appeal is barred by the doctrine of res judicata because the Sentencing Order was a final appealable order that was not directly appealed. Sopjack agrees that where, as here, CCS was imposed under R.C. 2929.25(A)(1)(a), the Sentencing Order was a final appealable order, but argues the Status Order modification of the conditions is a final appealable order under R.C. 2929.25(B).

{¶ 23} A defendant is barred from appealing a final judgment of conviction under the doctrine of res judicata "when the defendant, who was represented by counsel, failed to raise or litigate 'any defense or claimed lack of due process that was raised or could have been raised by the defendant at the trial, . . . or on appeal from that judgment.'" *Cleveland v. Southwest Invests., LLC*, 2024-Ohio-1271, ¶ 14,

(8th Dist.) (E.T. Gallagher, J., and Boyle, J., concurring in judgment only with separate opinion), citing *State v. Szefcyk*, 1996-Ohio-337, citing *State v. Perry*, 10 Ohio St.2d 175 (1967), paragraph nine of the syllabus.

{¶ 24} "The Ohio Supreme Court recently clarified its position on res judicata where a party fails to directly appeal a sentence in *State v. Henderson*, 2020-Ohio-4784. *Id*. at ¶ 14.

> "[S]entences based on an error are voidable, if the court imposing the sentence has jurisdiction over the case and the defendant[.] A sentence is void only if the sentencing court lacks jurisdiction over the subject matter of the case or personal jurisdiction over the accused." [*Henderson*]. at ¶ 27. "[U]nless it is vacated on appeal, a voidable judgment has the force of a valid legal judgment, regardless of whether it is right or wrong." *Id*. at ¶ 17. "The failure to timely — at the earliest available opportunity — assert an error in a voidable judgment, even if that error is constitutional in nature, amounts to the forfeiture of any objection." *Id*.

*Id*.

{¶ 25} Post-*Henderson*, the Court reiterated that res judicata should not be rigidly applied where it is not supported by justice and fairness, contravenes overriding public policy or results in a manifest injustice. Notwithstanding this acknowledgement, the Court conceded that while it "may have recognized that an exception to res judicata may apply in some extraordinary situations" it has "yet to apply an exception." *AJZ's Hauling, L.L.C. v. Trunorth Warranty Programs of N. Am.*, 2023-Ohio-3097, ¶ 18.

{¶ 26} The financial documents directive was contained in the Sentencing Order. Sopjack had a full and fair opportunity to be heard at the sentencing hearing.

It does not appear from the record that the Sentencing Order was modified. The housing court had subject-matter and personal jurisdiction. Because the Sentencing Order was voidable versus void and no direct appeal was filed, the second assignment of error is barred by the doctrine of res judicata and we lack jurisdiction.[2] *See Henderson*, 2020-Ohio-4784, ¶ 17.

{¶ 27} The second assignment of error is disregarded.

**Residence Interior**

{¶ 28} The first assignment of error challenges the housing court's authority to require an internal inspection of the Residence as a CCS where the Residence was not the locus of the offense. The city does not claim res judicata on this issue.

{¶ 29} The primary goal of the court in cases involving housing or building code violations "is to correct the violation and bring the property into compliance, rather than punish the defendant for misconduct." *Pentagon Realty* at ¶ 11, 13, citing *Cleveland v. Go Invest Wisely, L.L.C.*, 2011-Ohio-3047, ¶ 20 (8th Dist.). "To achieve this goal, trial courts have broad discretion in fashioning a sentence to determine the most effective way to bring about compliance." *Id.*, citing *Cleveland v. Schornstein Holdings, L.L.C.*, 2016-Ohio-7479, ¶ 19 (8th Dist.); R.C. 2929.22(A).

{¶ 30} This court will not disturb the trial court's sentence absent an abuse of discretion. *Pentagon Realty* at ¶ 12, citing *State v. Talty*, 2004-Ohio-4888, ¶ 10.

---

[2] Consequently, we may not address whether the financial conditions imposed on Sopjack are overbroad under the circumstances or serve to preserve the interest of justice, protect the community, and rehabilitate the offender as a proper CCS condition under the facts of this case. *Cleveland v. Pentagon Realty, L.L.C.*, 2019-Ohio-3775, ¶ 9 (8th Dist.).

An abuse of discretion occurs if a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. An abuse of discretion is "more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 31} "[U]nless a specific sanction is either required or precluded by law, a trial court may impose upon a misdemeanor offender any sanction or combination of sanctions under R.C. 2929.24 to 2929.28." *Id.*, citing *id.* "For a building code violation, other than for a minor misdemeanor, the penalties set forth by statute or ordinance may include fines, jail time, and community control sanctions for a maximum of five years." *Pentagon Realty* at ¶ 10, citing *N. Olmsted v. Rock*, 2018-Ohio-1084, ¶ 32 (8th Dist.); R.C. 2929.25(A)(1). "The court may impose one or more sanctions, and it may suspend all or some of a sanction." *Id.*, citing *Lakewood v. Krebs*, 2008-Ohio-7083, ¶ 14, 15 (M.C.); R.C. 2929.25.

{¶ 32} This court also observed in *Pentagon Realty* that "in ordering community control sanctions, a trial court has the discretion to 'impose additional conditions aimed at preserving the interest of justice, protection of the community, and the rehabilitation of the offender.'" *Id.* at ¶ 11, quoting *Rock* at ¶ 32, citing *Krebs* at ¶ 15. The additional conditions "must not be overbroad and must reasonably relate to the goals of community control: 'rehabilitation, administering justice, and ensuring good behavior.'" *Id.* at ¶ 13, citing, *State v. Mahon*, 2018-Ohio-295, ¶ 7 (8th Dist.), quoting *Talty*, 2004-Ohio-4888, at ¶ 11.

**{¶ 33}** *State v. Jones*, 49 Ohio St.3d 51 (1990), formulated a three-prong test to determine whether the trial court abused its discretion. "All three prongs of the *Jones* test must be satisfied for the reviewing court to find that the trial court did not abuse its discretion." *Pentagon Realty,* 2019-Ohio-3775, at ¶ 13, citing *Solon v. Broderick*, 2018-Ohio-4900, ¶ 8 (8th Dist.). The court must decide "'whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of [community control].'" *Id.*, quoting *Jones* at 53.

**Analysis**

**{¶ 34}** Sopjack contends that the internal inspection of her Residence is not a proper amendment to the CCS because the Residence is not the locus of the offense, no violation has been issued for the Residence, and the order allows an interior investigation at the Residence without probable cause.

**{¶ 35}** Where the court determines a defendant has violated community-control sanctions, the court may impose one or more of the following penalties:

> (1) a longer time under the same community-control sanction so long as the total time does not exceed five years[;]
>
> (2) a more restrictive community-control sanction and/or
>
> (3) a combination of community-control sanctions, including a jail term.

*Southwest Invests.*, 2024-Ohio-1271, at ¶ 22 (8th Dist.); R.C. 2929.25(D)(2).

{¶ 36} The city counters that this court upheld an interior inspection as a CCS condition in *Cleveland v. Grunt*, 2018-Ohio-4109 (8th Dist.). Grunt contended on appeal that while he was conducting the ordered exterior maintenance at the time of sentencing, an interior inspection CCS condition was too broad because it effectively declared "that the presence of any violation on the property created grounds for . . . a full inter[ior] inspection," and an interior inspection had no relationship to exterior violations. *Id.* at ¶ 7. This court found no error in the imposition of the CCS condition.[3]

{¶ 37} The city concedes *Grunt* is distinguishable because the property in *Grunt* was the locus of the offense. It also maintains that as this court determined in *Grunt*, the condition meets the *Jones* test for the Residence because the housing specialist testified there were indications of hoarding and neglect of property.

{¶ 38} This court determined in *Grunt* that the *Jones* test was met "because the interior inspection of the property as a condition of Grunt's CCS furthers the statutory goals of misdemeanor sentencing." *Id.* at ¶ 16. The property was vacant for eight years, utilities had been shut off for years, and the only heat came from space heaters. There was also Grunt's habitual failure to repair the exterior of the house and signs of hoarding included items stored in the yard and driveway allegedly due to lack of empty space inside the house. *Id.* at ¶ 20. The garage had been condemned, Grunt was cited for violations at the property in 2000, 2002,

---

[3] We noted in *Grunt* that "[n]either party" cited "Ohio law analyzing the legality of a property inspection as a condition of CCS imposed for failing to repair housing code violations." *Id.* at ¶ 15.

2008, 2014, 2015, and 2016, and the local councilperson had posed multiple complaints. *Id.* at ¶ 10-11.

{¶ 39} Of pivotal import, the property was the locus of the offense. There was "some relationship" between the exterior and interior condition of the property, and the interior inspection was "reasonably related" to the crime of failure to comply with the ongoing housing violations. *Id.* at ¶ 16.

{¶ 40} In the instant case, the specialist took external photographs of the Residence that the specialist acknowledged was to some extent obscured by snow. The specialist reported the following: several boxes blocked the rear entrance, what appeared to be an open attic window covered by a mattress, debris and an apparently inoperable vehicle in the yard with overgrown vegetation, and a damaged garage. The specialist and the housing court opined that Sopjack is a hoarder.

{¶ 41} Defense counsel maintained the objection to the interior inspection and reiterated the history of the Property and Sopjack's financial situation, adding that Sopjack has no cell phone, internet service, or transportation, and is unable to pay the taxes at the Property or come up with a maintenance plan. Taxes for the Residence are up to date. Counsel requested that the housing court find Sopjack indigent and have community-court service clean up the exterior of the Property to allow Sopjack to donate or sell the Property.

{¶ 42} The housing court stated:

> If you're not getting Social Security and you don't have any way to pay
> your bills or eat or anything because of this additional property, then
> the Court is more than happy to step in and assist your attorney and

> the social workers they provided. But we have to put things in place, and we have to get an overall picture of your financial health and your home health, meaning that from an inspection by specialist . . . Butler, who took pictures of the exterior. It raises concerns. So much so — so that the thing of — the purpose of Housing Court is one, we would love for you to age in place in your house. But if you don't have working furnaces or gas or electricity in your property, the Court has to know about that so we can get you connected with the City of Cleveland Department of Aging, also the City of Cleveland Department of Building the Housing Senior Initiative. These programs are specifically designed for residents in the City of Cleveland that reside that are seniors and could need guidance and assistance from that.

Tr. 18. The housing court suggested the housing specialist reach out to the local neighborhood development corporation for assistance.

{¶ 43} Upon review of the Sentencing Order, the housing court stated, "But this is what I'm adding — and I did say, I believe, in the judgment entry and order that this is subject to modification — I am ordering that an exterior and interior inspection" of the Residence "be conducted." Tr. 21. Sopjack was informed the examination was to be conducted by the senior initiative inspector Shockley who worked closely with seniors in Cleveland.

> You have to allow [the inspector] to come in to inspect the interior and exterior of your property and/or garage or garages or sheds that's located there because I see some damage on the property through the exterior-wise. And he can get you connected, once again, with resources to make those repairs needed on your property in which you live. . . . It is not a form of punishment, but it is to allow you to have a healthy environment so that you don't get sick with this ever-changing weather . . . . So I want to make sure that there's no issues with your property where you live, okay?"

Tr. 21-22. The housing court repeated the request for financial documentation to secure assistance for programs.

**{¶ 44}** Sopjack informed the housing court that she has heat, electricity, a functional furnace, and landline phone service at the Residence provided through utility assistance programs. Sopjack explained that the back entranceway consisted of a hallway with an interior and exterior doorway. She has a steel door in the interior back doorway and has never had a back door in the exterior back hallway because she did not know it was required.

**{¶ 45}** Sopjack also explained:

> The only reason those boxes were in front of my back door was because there was a woman that was bringing me groceries like about once a week for the last couple of years and she was bringing me dinners from the Hunger Center once a week. And she was putting them on those boxes. I can remove the boxes. They're just there for when — if someone comes to put things there for me, because then all I have to do is open the steel door and grab the stuff off the boxes. But I mean, it's just two cardboard boxes sitting in front of the door; other than that, it's —

> That mattress on the back door that is up in the attic. That window had a problem with the frame on that attic window in the back, so there was — I did have the mattress there just to block off air, whether it be heat or cold air, either one. It's not — it's just there because of I thought that would block off the cold air or the heat during the winter or summer. The window's not being used. It's just an attic . . . . It's not actually . . . broke. It's just the frame is messed up on it where the window started sliding down — the glass started sliding down a little bit out of the frame.

Tr. 23-24.

**{¶ 46}** Counsel interjected:

> Your Honor, if I can just add again, I know you — I made an objection, but again, based upon Ms. Sopjack's testimony we just heard and the fact that this property is not the cited property, that she's on Community Control, I would again object to any interior inspection. I believe that would be an unreasonable search. It'd be an unconstitutional order by the Court.

Tr. 25.

{¶ 47} The housing court rejoined that it had jurisdiction over all of Sopjack's properties "and I can tell from the photos that were submitted to this Court and [the specialist's report] . . . that there is a probability that there are violations that she could be cited for by an inspector. . . ." Tr. 26. The interior and exterior inspections and financial documents had to be provided to allow the court to determine what resources were needed to assist Sopjack with the Property and Residence.

{¶ 48} Sopjack implored:

— excuse me, I do have one more question. I'm begging you, Judge, please, I know — I understand the inspection on the outside of my [sic] house, but it is an invasion of privacy, and I am very, very sick. And I would appreciate it so very much if you would not have my inside of my home inspected at this point in time.  I'm begging you, please.

Tr. 36.

{¶ 49} The housing court insisted. "I've got to move forward with the inspection of the interior of the [Residence] because if my senses are correct, I suspect there's something going on that you don't want anyone to see inside the [Residence]". *Id.* "And as I stated before, my interest is in protecting your health and your well-being. So the order has been issued to have an interior and exterior inspection done to your property.  That is the order of the Court."

{¶ 50} The inquiry under the *Jones* test is whether requiring the internal inspection of Sopjack's Residence where the CCS was imposed for failure to remediate violations at the Property, the locus of the offense, is "'(1) reasonably

related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of' CCS." *Grunt* at ¶ 6, quoting *Jones*, 49 Ohio St.3d 51, 53 (1990).

{¶ 51} The housing court advised Sopjack at the status hearing that the interior inspection CCS condition was "not a form of punishment, but it is to allow you to have a healthy environment so that you don't get sick with this ever-changing weather. . . ." Sopjack explained at the status hearing that she has utilities and other forms of assistance such as for food and that the stress of the entire situation was "actually keeping me sick from my nerves and just so many [sic] overwhelming confusion. . . ." "And then when I wasn't allowed to sell the house, that was even more because once a whole year goes by, you have to reprove your disability" to SSI. Sopjack was also worried about possibly having a warrant issued. In addition, Sopjack lacked transportation to access the library for Zoom hearings, to attend hearings at the housing court, or to visit the Property as ordered.

{¶ 52} The housing court replied, "So Ms. Sopjack, I don't believe it's Housing Court that's keeping you sick or preventing you from not being in a state of confusion. If anything, this Court is here, and we're going to step in to assist you with this property." "But you didn't really know what was going on with the property. You hadn't even visited the property."

{¶ 53} This court has repeatedly stated that the primary goal of the housing court in addressing code violation cases "is to correct the violation and bring the

property into compliance, . . . rather than punish the defendant for misconduct." *Pentagon Realty,* 2019-Ohio-3775, at ¶ 9 (8th Dist.), citing *Go Invest Wisely, L.L.C.,* 2011-Ohio-3047, at ¶ 20 (8th Dist.), citing *Krebs,* 150 Ohio Misc. 2d 1, at ¶ 19 (M.C.).

{¶ 54} This district's case law provides that pertinent factors include:

> (a) the nature of the offense, (b) whether there is a history of persistent criminal activity and a substantial risk that the offender will commit another offense; (c) whether there is a pattern of repetitive, compulsive, or aggressive behavior with heedless indifference to the consequences; and (d) whether the offender is likely to commit future crimes in general. R.C. 2929.22(B)(1).

*Go Invest Wisely, L.L.C.,* at ¶ 9.

{¶ 55} As for the status hearing, no violation had been issued for the Residence. In fact, though the interior inspection is the pending issue, the Sentencing Order directed that Sopjack "allow the Housing Court Specialist. . . to take photos of the Residence. . . ." The Status Order added the "interior and exterior inspection" of the Residence "including any garages or sheds. . . ." Status Order, p. 1.

{¶ 56} The housing court informed Sopjack that the interior inspection was required because the housing specialist suspected Sopjack could be a hoarder and "because if my senses are correct, I suspect there's something going on that you don't want anyone to see inside the property." Tr. 36. The Sentencing Order reflects that property taxes at the Residence were not in arrears. Sopjack testified she has utilities, a landline phone, and food at the Residence and provided a detailed explanation for the presence of the questioned exterior issues.

{¶ 57} Based on the unique facts of this case, this court finds that the interior inspection of the Residence is not reasonably related to rehabilitating the offender for the criminal conduct, reasonably related to the crime of which Sopjack was convicted, *i.e.*, for the Property, nor is it reasonably related to future criminality or serve the statutory ends of community-control sanctions. *Jones*, 49 Ohio St.3d 51, 553.

{¶ 58} In the concurring-in-judgment-only opinion in *Southwest Invests, LLC*, 2024-Ohio-1271 (8th Dist.), joined by a second panel member, this court addressed "significant concerns with the pattern employed in the housing court, including its use and implementation of overly punitive conditions of community control sanctions in cases involving corporations or limited liability companies." *Id.* at ¶ 35. This court stated that but for the *AJZ Hauling* decision, the *Southwest* case would have been the exceptional case where res judicata should not apply.

{¶ 59} Here, we add that the concerns set forth in *Southwest* regarding punitive conditions of CCS for businesses are equally applicable in a case such as the instant one. In *Southwest*, concerns expressed about the scope of conditions imposed under Housing Div. Loc.R. 2.18. are also shared by this court in the instant case.

> I recognize that Housing Div. Loc.R. 2.18 requires offenders to keep all of its properties in good repair, which "includes the obligation to regularly inspect and maintain the property and the obligation to keep each property clean of debris, secure from entry and free of graffiti. This requirement is in addition to compliance with city or state code requirements for real property."

*Id.* at ¶ 45.

{¶ 60} Specifically, the inclusion of other properties owned by the defendant may be supported by the local rule, but the restrictions imposed against other properties of the defendant are not rehabilitative and serve to preemptively circumvent the procedure and policies in place in the building and housing department for ensuring compliance with the applicable statutes and ordinances. *Id.* at ¶ 45. "If another property owned by [the defendant] was in violation of a local building or housing code, the city was entitled to issue a citation" and afford due process. *Id.*

{¶ 61} The efforts of the city and the housing court are much needed and difficult to administer, particularly in cases such as this one. The involvement of social service agencies is laudable and necessary, particularly in a case such as Sopjack's. It is true that "[v]acant, abandoned, and deteriorated properties reduce the value of surrounding properties, leading to decreases in owners' equity and personal wealth. In Cleveland, Ohio, properties within 500 feet of a vacant, tax-delinquent, and foreclosed property lost 9.4 percent of their value."[4] The properties pose safety hazards and can be havens for criminal activity.

{¶ 62} The city has been proactive in implementing programs to invest in the quality of existing homes and assist vulnerable tenants and homeowners as

---

[4] How Vacant and Abandoned Buildings Affect the Community, Center for Community Progress, March 24, 2023, https://www.clevelandohio.gov/residents/codes-ordinances/residents-first/vacant-properties, (accessed Oct. 14, 2024.)

presented in *Cleveland 2030: A Housing Equity Plan*, by Cleveland Department of Building and Housing, September 2021.  The City has also been zealously legislating to address the issue of out-of-state and absentee landlords.[5]  A rule such as Housing Div. Loc.R. 2.18, currently Loc.R. 2(S), carefully and properly applied facilitates oversight of multiple properties expediently in such situations.

{¶ 63} This case involves a senior citizen with mental-health issues cited for the Property — her childhood home subsequently vandalized preventing her from moving in — who lost her social security income because of taking ownership of the Property while owning her personal Residence.  The Property was never an income property.  As a result of the income loss and current criminal case, Sopjack is unable to repair the Property, sell it, or demolish it.  Instead, she has been placed on criminal probation, is concerned that the warning of a potential arrest warrant could come to fruition, and is now subject to the exterior inspection of her private residence and possibly in the future an interior inspection. One can only conclude that the conditions in this case constitute overly broad sanctions that merely serve to punish Sopjack, though such was not the housing court's stated intent.  *See Southwest Invests.* at ¶ 46.

{¶ 64} Defense counsel's efforts to provide additional assistance to Sopjack are also commendable.  Perhaps an avenue to assist individuals like Sopjack that provides the much-needed social services prior to the implementation of criminal

---

[5]    https://www.ideastream.org/government-politics/2024-02-05/cleveland-to-overhaul-housing-code-crack-down-on-out-of-state-and-absent-landlords, (accessed Oct. 14, 2024.)

charges, threats of potential imprisonment, and placement on criminal probation would be a more economical, equitable, and compassionate avenue to meet the valid needs of all parties.

{¶ 65} The first assignment of error is sustained.

**Conclusion**

{¶ 66} The appeal of the housing court's judgment requiring the financial documents is barred by res judicata. The trial court's order to inspect the interior of the Residence is reversed. Thus, the appeal is dismissed in part, judgment is reversed in part, and the case is remanded for further proceedings pursuant to this opinion.

It is ordered that appellee and appellant equally share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court Housing Division to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

EMANUELLA D. GROVES, P.J., and
MICHAEL JOHN RYAN, J., CONCUR