[Cite as *State v. Hayes*, 2025-Ohio-2483.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
ALLEN COUNTY


STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

JOSHUA L. HAYES,

    DEFENDANT-APPELLANT.

CASE NO. 1-24-42


OPINION AND
JUDGMENT ENTRY


Appeal from Allen County Common Pleas Court
Trial Court No. CR2023 0310

Judgment Affirmed

Date of Decision: July 14, 2025


APPEARANCES:

    *Kenneth Rexford* for Appellant

    *John R. Willamowski, Jr.* for Appellee

**MILLER, J.**

{¶1} Defendant-appellant, Joshua L. Hayes ("Hayes"), appeals the June 11, 2024 judgment entry of sentence of the Allen County Court of Common Pleas. For the reasons that follow, we affirm.

*Background*

{¶2} On June 14, 2022, Detective Jack Miller ("Detective Miller") and Sergeant Rob Kohli ("Sergeant Kohli") were dispatched to 4040 West Breese Road in Allen County, Ohio in response to a report of suspected drugs located on the property. The officers spoke to several individuals, including Hayes's ex-wife, Angela Hayes ("Angela"), who was living in the home and led officers to the suspected drugs. Officers subsequently obtained a search warrant for Hayes's business, One River Collective, and additional suspected drugs were found at that location.

{¶3} On October 12, 2023, the Allen County Grand Jury indicted Hayes on six counts: Counts One and Four of possession of hashish in violation of R.C. 2925.11(A), (C)(7)(e), third-degree felonies; Counts Two and Five of aggravated possession of drugs in violation of R.C. 2925.11(A), (C)(1)(b), third-degree felonies; and Counts Three and Six of possession of marihuana in violation of R.C. 2925.11(A), (C)(3)(d) and 2925.11(A), (C)(3)(e), respectively, third-degree felonies. Hayes entered a written plea of not guilty on November 6, 2023.

-2-

{¶4} Hayes filed a motion seeking a determination of his eligibility for intervention in lieu of conviction ("ILC") on December 1, 2023. That same day, Hayes filed a motion to suppress the direct and derivative fruits of the searches of both his residence and business claiming the searches violated his constitutional rights.

{¶5} On January 12, 2024, the trial court issued a judgment entry overruling Hayes's motion for a ruling on eligibility for ILC. On February 1, 2024, Hayes filed a motion for reconsideration regarding the trial court's decision on Hayes prior motion for a ruling on his eligibility for ILC. On February 13, 2024, the trial court issued a judgment entry overruling Hayes's request.

{¶6} The State responded on April 1, 2024 to Hayes's motion to suppress evidence obtained from the searches. A hearing on the motion to suppress was held on April 5, 2024. On April 23, 2024, the trial court filed a judgment entry overruling Hayes's motion to suppress the evidence.

{¶7} At a change-of-plea hearing held on April 29, 2024, Hayes withdrew his not-guilty pleas and entered no-contest pleas to the counts in the indictment. The trial court accepted Hayes's pleas and found him guilty as charged. The trial court continued the matter for sentencing and ordered a presentence investigation be prepared.

{¶8} A sentencing hearing was held on June 11, 2024 where Hayes was sentenced to 18 months in prison on each count. The trial court ordered the counts

to run concurrently for a total term of 18 months. The trial court filed its judgment entry of sentence that same day.

{¶9} On June 14, 2024, Hayes filed a notice of appeal. He raises three assignments of error for our review. For ease of discussion, we elect to address Hayes's first two assignments of error together.

### First Assignment of Error

**The Trial court erred in denying the defense motion to suppress the fruits of the warrantless search of Mr. Hayes's home at 4040 West Breese Road on June 12, [2022], conducted in violation of Mr. Hayes's rights under both the Ohio Constitution and the United States Constitution.**

### Second Assignment of Error

**The Trial Court erred in denying the defense motion to suppress the fruits of the warranted search of Mr. Hayes's place of employment on Shawnee Road on June 16, [2022], fruit of the poisonous tree of the June 12th search, conducted in violation of Mr. Hayes's rights under both the Ohio Constitution and the United States Constitution.**

{¶10} In his first assignment of error, Hayes argues that the trial court erred by overruling the motion to suppress evidence obtained during the search of 4040 West Breese Road on June 12, 2022. In his second assignment of error, Hayes contends the trial court erred by denying his motion to suppress evidence from the search of Hayes's place of employment, One River Collective. For the reasons that follow, we disagree.

*Suppression Motion Standard of Review*

**{¶11}** "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id. See State v. Carter*, 72 Ohio St.3d 545, 552 (1995). When reviewing a ruling on a motion to suppress, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). With respect to the trial court's conclusion of law, however, our standard of review is de novo, and we must independently determine whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist. 1997).

*The Constitutionality of Consent Searches*

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

"The Fourth Amendment proscribes all unreasonable searches[.]" *Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408 (1978). Generally, warrantless searches are unreasonable, and therefore impermissible, under both the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution.

*State v. Ward*, 2017-Ohio-8141, ¶ 13 (1st Dist.); *State v. Smith*, 73 Ohio App.3d 471, 474-475 (6th Dist. 1991). However, the warrant exception is subject to a handful of "specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507 (1967); *State v. Nickelson*, 2017-Ohio-7503, ¶ 15 (7th Dist.), quoting *Xenia v. Wallace*, 37 Ohio St.3d 216, 218 (1988). "One specifically established exception to the warrant requirement is 'a search that is conducted with consent.'" *State v. Hawkins*, 2016-Ohio-1404, ¶ 98 (10th Dist.), quoting *State v. Portman*, 2014-Ohio-4343, ¶ 11 (2d Dist.). "'"[W]here the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority."'" *State v. Nwachukwa*, 2015-Ohio-3282, ¶ 28 (3d Dist.), quoting *State v. Aguirre*, 2012-Ohio-2014, ¶ 12 (3d Dist.), quoting *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319 (1983).

**{¶12}** Here, it is not disputed that officers obtained Angela's consent to search the room at 4040 West Breese Road, and Hayes does not argue that Angela's consent was not freely and voluntarily given. It is also not disputed that officers did not ask Hayes for his consent to search the house and that Hayes did not give his consent. Accordingly, the legality of the search of 4040 West Breese Road is dependent on whether Angela had the authority to consent to the search.

{¶13} "Consent to search can be 'obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the premises'" or effects searched. *State v. Sky Lake*, 2018-Ohio-1707, ¶ 18 (4th Dist.), quoting *Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S.Ct. 2793 (1990); *see United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988 (1974). Common authority

> is . . . not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Matlock* at 171, fn.7. "A third party can consent to a warrantless search if he 'possesse[s] common authority over or other sufficient relationship to the premises' sought to be searched.'" *State v. Landrum*, 2018-Ohio-4582, ¶ 17 (1st Dist.), *Matlock* at 171, fn.7.

{¶14} "It is not necessary that the consenting third party have actual authority over the premises." *State v. Anders*, 2017-Ohio-2589, ¶ 26 (3d Dist.). "Even where the consenting third party lacked actual authority to consent to a search, the consent is still valid if the police reasonably believed that the person had authority to consent to the search." *Id.*, citing *Illinois v. Rodriguez*, 497 U.S. 177, 188-189 (1990). "Whether apparent authority existed must 'be judged against an objective standard:

would the facts available to the officer at the moment . . . "warrant a man of reasonable caution in the belief" that the consenting party had authority over the premises.'" *State v. Norman*, 2014-Ohio-5084, ¶ 38, (12th Dist.), quoting *Rodriguez* at 118, quoting *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S.Ct. 1868 (1968).

*Suppression Hearing*

{¶15} At the suppression hearing, Detective Miller with the Shawnee Township Police Department, testified that on June 14, 2022, he and Sergeant Kohli responded to 4040 Breese Road in Allen County, Ohio for a report of potential contraband found by occupants of the property. (Apr. 5, 2024 Tr. at 11-12). When the officers arrived at the scene, they met with Angela, her aunt, and her mother, who were in the process of moving Angela out of the residence and out of state.

{¶16} The State introduced State's Exhibit 2[1], Sergeant Kohli's body-worn camera footage of his interaction with the women who were in the residence. In the video, Angela's aunt reported that while packing Angela's belongings, she entered a room and noted the smell of marijuana. She then nearly tripped over a handle in the floor and when she lifted the handle, she discovered bags of marijuana in a compartment under the floor. The aunt found more suspected marijuana in an ottoman footstool.

---

[1] The parties stipulated to the admission of State's Exhibit 2. (Apr. 5, 2024 Tr. at 4-5).

{¶17} The video depicts Angela reporting to the officers that Hayes owned the house but Angela had been living in the house with her children since November or December of 2020. Angela stated that in November of 2021 Hayes moved into the residence with Angela and the children but on April 10, 2022, he was removed from the residence due to a domestic-violence situation.

{¶18} The suspected drugs were found in a room where Hayes had stayed when he was living in the house that Angela referred to as Hayes's "area" or "room." (State's Ex. 2). Angela told the officers that she did not usually go in the room and that the room always "smelled like pot." (*Id.*). Angela stated that she assumed that when Hayes came to retrieve his belongings following his removal that he would have taken anything that he wanted. Angela alleged that Hayes never told her she could not go into the room or locked the door. Angela reported that she had a bed in the room that she was letting Hayes's children borrow, and she confirmed had "free and normal access" to the area in the time that she lived in the residence. (*Id.*).

{¶19} Hayes testified that he is the owner of the house, and that he was awarded the house in the divorce settlement in 2014 or 2015. (Apr. 5, 2024 Tr. at 42). Hayes stated that in 2020, he allowed Angela and her children to move into the house. (*Id.*). He testified that in November 2021, he moved back into the home, where Angela and her children were living, into a "separate space" which Hayes described as his "own" and described as similar to a "studio space." (*Id.* at 43, 47-48). Hayes reported that despite their living arrangement, he and Angela did not get

along, so he kept in his space. (*Id.* at 43). Hayes stated that he locked the door to the room "every single day" when he left the house. (*Id.* at 44).

**{¶20}** According to Hayes, when he was arrested for domestic violence, he was released from jail on the condition that he could not return to the home or be around his children. (*Id.* at 45-46). He denied that he was ever allowed back into the home to retrieve any belongings following his arrest. (*Id.* at 47). Hayes also denied that Angela had personal items in the room. (*Id.* at 48).

*Analysis*

**{¶21}** With respect to the search of 4040 Breese Road, the trial court found as follows:

> Contrary to the characterization by counsel for the defendant, the compartment under the floor was not secret, secured, or hidden. Rather, a metal D-ring handle was visible to anyone who looked down at the floor as they crossed the threshold. The door to this compartment was also visible, not hidden. The aunt simply did not see it but instead tripped over the handle, which was not flush with the floor. Similarly, the ottoman was not hidden, its top was not secure, and its contents were not secreted in any way. Further, by what Angela said, when he came to retrieve some of his belongings, he could have secured this room at this time.[2]

> Thus this Court **FINDS**, using an objective standard, that Angela's consent was valid because an officer looking at the then-available facts could reasonably conclude that Angela had apparent authority to consent.

> For these reasons, the motion to suppress in regards to the search of the Breese Rd. home is **HEREBY OVERRULED**.

---

[2] Again, even assuming that Angela was not truthful to the officers, her demeanor and the circumstances are what must be ascertained to determine whether the officers had a reasonable belief that she was authorized to give consent.

(Doc. No. 48). (Footnote in original).

{¶22} After reviewing the evidence in concert with the applicable standard, we find that the trial court did not err by failing to suppress the fruits of the search of 4040 West Breese Road. As the trial court noted, Angela informed the officers that she had free access to the room where the suspected contraband was found and even stated that she had property in the room. Angela further alleged the room was not locked and that Hayes had the opportunity to retrieve his property from the living space after he was removed from the property by court order, which she assumed he had done.

{¶23} Although Hayes did testify that Angela did not have actual authority to permit officers into the room where the contraband was found, we nevertheless find that the trial court did not err by finding Angela had apparent authority to permit officers to enter the room where the contraband was found. Accordingly, even if Angela was untruthful with respect to her statements to law enforcement, when reviewing the evidence, including Angela's demeanor and the circumstances surrounding the search, we do not find that law enforcement erred by relying on her statements. Thus, we do not find that the trial court erred by denying Hayes's motion to suppress the search of the residence.

{¶24} Hayes's first assignment of error is overruled.

{¶25} In his second assignment of error, Hayes argues that the trial court erred by failing to suppress the search of One River Collective, Hayes's business. Hayes alleges that because the "fresh" evidence contained in the affidavit supporting the issuance of the search warrant for his business described the fruits of the search of 4040 West Breese Road, a search that Hayes characterizes as unconstitutional, the search warrant was the result of fruit of the poisonous tree.

{¶26} However, in our discussion of Hayes's first assignment of error, we found that the search of 4040 West Breese Road was not unconstitutional. Accordingly, the results of the search of his business would not have been fruit of the poisonous tree, as Hayes alleges. Thus, Hayes's argument fails, and we find that the trial court did not err by denying Hayes's motion to suppress the search of One River Collective.

{¶27} Hayes's second assignment of error is overruled.

### Third Assignment of Error

**The Trial Court erred in finding that [Hayes] was not eligible for Intervention in Lieu of Conviction.**

{¶28} In his third assignment of error, Hayes argues that the trial court erred by finding that he was not eligible for ILC. For the reasons that follow, we find that Hayes has forfeited the argument because he failed to file a request for ILC.

*Standard of Review*

**{¶29}** "Generally, a trial court's decision relative to an offender's motion for ILC is reviewed for an abuse of discretion." *State v. Seawell*, 2020-Ohio-155, ¶ 5 (12th Dist.). "However, a trial court's interpretation and application of the statutory eligibility requirements for intervention is a matter of law subject to a de novo review." *Id.*

*Relevant Law*

**{¶30}** R.C. 2951.041, which governs eligibility for ILC, provides, in relevant part, that a trial court "may accept, prior to the entry of a guilty plea, the offender's request for intervention in lieu of conviction." R.C. 2951.041(A)(1). The statute provides, in part, that an offender is eligible for intervention in lieu of conviction if the court finds the offender has met a number of criteria, including, in relevant part:

> (B)(2) The offense is not a felony of the first, second, or third degree, is not an offense of violence, is not a felony sex offense, is not a violation of division (A)(1) or (2) of section 2903.06 of the Revised Code, is not a violation of division (A)(1) of section 2903.08 of the Revised Code, is not a violation of division (A) of section 4511.19 of the Revised Code or a municipal ordinance that is substantially similar to that division, and is not an offense for which a sentencing court is required to impose a mandatory prison term.

> (3) The offender is not charged with a violation of section 2925.02, 2925.04, or 2925.06 of the Revised Code, is not charged with a violation of section 2925.03 of the Revised Code that is a felony of the first, second, third, or fourth degree, and is not charged with a violation of section 2925.11 of the Revised Code that is a felony of the first or second degree.

*Analysis*

**{¶31}** Here, Hayes contends that the trial court erred by finding that he was not eligible for ILC. He alleges that the trial court erred by indicating that R.C. 2951.041(B) bars him from eligibility for ILC because all of his pending charges were third-degree felonies. Hayes alleges that although R.C. 2951.041(B)(2) requires that the "offense is not a felony of the first, second, or third degree," it must be read in concert with R.C. 2951.041(B)(3) which requires that "the offender is not charged with . . . a violation of [R.C. 2925.11] that is a felony of the first or second degree." Hayes alleges that it was the intent of the legislature to enable offenders charged with third-degree felony possession of drugs charges to seek ILC. *But see Seawell*, 2020-Ohio-155, at ¶ 9-10 (finding R.C. 2951.041(B)(2) is "specific to the offenses to which one pleads guilty" whereas R.C. 2951.041(B)(3) is "specific to the charges brought against an offender regardless of his or her ultimate plea").

**{¶32}** On December 1, 2023, Hayes filed a motion for ruling on eligibility for ILC. Hayes articulated in the filing that he "seeks a decision finding that Mr. Hayes is in fact eligible for Intervention in Lieu of Conviction, should he so request." (Doc. No. 23). On January 12, 2024, the trial court filed its judgment entry on Hayes's motion for ILC. The trial court overruled Hayes's motion because "the defendant has not made a request for intervention but rather has made a request for a determination by this Court if he is eligible for intervention" and "[b]y statute, the appropriate forum to make such a determination is at a hearing following a

-14-

request for intervention." (Doc. No. 33). The trial court did state that the charges against Hayes "do not seem to render him ineligible" for ILC, but that Hayes's eligibility "seems to be contingent upon what, if anything, he ultimately pleads guilty to." (*Id.*). The court stated that because it is unaware of any plea offer by the State "much less an offer that includes offenses less than a felony of the third degree" it was "not in the position to determine" whether Hayes is eligible for ILC "even if [the court] were inclined to provide an 'advisory' opinion." (*Id.*).

{¶33} On February 1, 2024, Hayes filed a motion to reconsider the ruling on eligibility for ILC. Hayes alleged that he was "not simply requesting an advisory decision but rather seek[ing] a ruling of law" regarding whether he can pursue ILC. (Doc. No. 37). The trial court denied Hayes's motion to reconsider on February 13, 2024 "[f]or all the reasons provided by [the trial court] in its original decision." (Doc. No. 38).

{¶34} The record indicates that Hayes did not actually file a request for ILC. Rather, Hayes filed for a determination of eligibility prior to filing a motion for ILC. Thus, as the trial court noted in its judgment entries, Hayes sought an advisory opinion. R.C. 2951.041 provides that the request for ILC must include, in pertinent part, "a statement from the offender as to whether the offender is alleging that the drug or alcohol usage by the offender was a factor leading to the criminal offense" and "a waiver of the defendant's right to a speedy trial, the preliminary hearing, the time period within which the grand jury may consider an indictment against the

offender, and arraignment, unless the hearing, indictment, or arraignment has already occurred" prior to the court's determination of the offender's eligibility for ILC. R.C. 2951.041(A). Hayes failed to include the statutorily-required statement and waivers with his motion regarding his eligibility for ILC.

{¶35} Accordingly, Hayes did not file a request for ILC and the trial court did not actually deny a request for ILC because one was never made.[3] Consequently, Hayes forfeited the argument he now attempts to raise on appeal. *See State v. Quarterman*, 2014-Ohio-4034, ¶ 15, quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019 (1938).

{¶36} Hayes's third assignment of error is overruled.

*Conclusion*

{¶37} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the Allen County Court of Common Pleas.

***Judgment Affirmed***

**WALDICK, P.J. and ZIMMERMAN, J., concur.**

---

[3] We also note that the ILC statute speaks in terms of the offender entering a guilty plea and Hayes entered no-contest pleas to his six charges. *See* R.C. 2951.041(A)(1) and (C).

Case No. 1-24-42

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

_____
Mark C. Miller, Judge


_____
Juergen A. Waldick, Judge


_____
William R. Zimmerman, Judge

DATED:
/jlm

-17-