[Cite as *Cleveland v. Shaker Hts. Apts. Owner, L.L.C.*, 2026-Ohio-449.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF CLEVELAND,  :

    Plaintiff-Appellee,  :

                                     Nos. 114852, 114853, and
    v.  :  114854

SHAKER HEIGHTS APARTMENTS  :
OWNER LLC,

    Defendant-Appellant.  :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED IN PART, REVERSED AND
                VACATED IN PART, AND REMANDED
**RELEASED AND JOURNALIZED:**  February 12, 2026

---

Criminal Appeal from the Cleveland Municipal Court
Housing Division
Case Nos. 2023-CRB-007888, 2023-CRB-007891, and 2023-CRB-007893

---

### *Appearances:*

Mark Griffin, Director of Law, William H. Armstrong, Jr.,
and Russ Gates, Assistant Law Directors, *for appellee*.

Powers Friedman Linn, PLL, and Rachel E. Cohen, *for
appellant*.

EMANUELLA D. GROVES, P.J.:

{¶ 1} Defendant-appellant Shaker Heights Apartments Owner, LLC

("Appellant") appeals the Cleveland Municipal Court, Housing Division's (the "trial

court") denial of a motion to suppress and the sentence imposed after Appellant's no contest pleas. For the reasons that follow, we affirm in part, reverse and vacate in part, and remand for resentencing of the fines.

**Factual and Procedural History**

{¶ 2} In August 2023, Inspector Kenneth Eaton ("Inspector Eaton"), an employee of plaintiff-appellee City of Cleveland's ("Appellee") Department of Building and Housing, Division of Code Enforcement ("building and housing"), issued a notice of violation of building and housing ordinances to Appellant for three of their properties at 12500, 12600, and 12701 Shaker Boulevard in Cleveland. Inspector Eaton performed an inspection on each building's elevators on a prior date, discovering multiple elevator-code violations in each. Violations included, but were not limited to, the need to clean oil and grease from the car top, bedplate, and machine room floor; replace hoist cables; install self-closing doors; remove all material not specifically used for elevator maintenance or operation from the machine room; and to install Class "C" fire extinguishers in the machine room. Appellant was given 30 days to both comply with the notice and appeal the alleged violations with the city.

{¶ 3} After follow-up inspections in September, Inspector Eaton filed three separate criminal complaints for each address alleging that Appellant had failed to correct the violations in Cleveland M.C. Nos. 2023-CRB-007888, 2023-CRB-007891, and 2023-CRB-007893. The complaints charged Appellant with seven

first-degree misdemeanor violations of Cleveland Cod.Ord. 3103.25(e).[1] Cleveland's ordinances provide that each day a property is out of compliance with the code constitutes a separate offense.[2] Cleveland Cod.Ord. 3103.99(a).

{¶ 4} In April 2024, Appellant filed a motion to suppress arguing that the inspections were conducted without reasonable suspicion or probable cause, and Inspector Eaton failed to obtain a warrant to search the properties. Appellant focused on the administrative-search exception to the warrant requirement for pervasively regulated industries delineated in *New York v. Burger*, 482 U.S. 691 (1987). Appellant argued that Cleveland's ordinances did not provide adequate notice to a property owner regarding the nature or scope of the search and thus, it was not an adequate substitute for obtaining a warrant.

{¶ 5} Appellee filed a responsive brief that argued the elevator industry was a pervasively regulated industry and that Cleveland's ordinances met the *Burger* requirements.

---

[1] Cleveland Cod.Ord. 3103.25(e) provides: "No person shall fail to comply with any stop work order issued under the provisions of this Building Code; nor refuse, neglect or fail to comply with a notice to repair, rehabilitate or demolish a building or other structure declared to be unsafe under the provisions of this Building Code; nor maintain a use or occupancy prohibited by this Building Code; nor refuse, neglect or fail to maintain stair enclosures, stairways, fire escapes, exit passageways or other required means of egress in a safe and usable condition as required by OBC or this Building Code."

[2] In 2023-CRB-7888, the complaint alleged three days out of compliance for three counts of Cleveland Cod.Ord. 3103.25(e), while both 2023-CRB-7891 and 2023-CRB-7893 alleged two days out of compliance, i.e., two counts of 3103.25(e) each.

{¶ 6} The trial court held a hearing on Appellant's motion in August 2024. Appellee's sole witness was Inspector Eaton. He testified that he had worked for the city as an elevator inspector for six years and that prior to that he had done similar work for an elevator company for 20 years. Inspector Eaton noted that elevator inspections occur on an annual basis. Typically, his supervisor would provide him a list of 50-60 properties to inspect. There was no set time frame to complete the list, and it could take up to a month to complete inspections on one list. Once he and his partner completed the first list, his supervisor would assign them another set of properties to inspect. Inspector Eaton testified that typically when approaching a secured building, it was his practice to call or buzz the property manager's office, explain why he was there, and seek permission to inspect the elevators. If no one answered, he would leave a message, wait ten minutes, and then leave. In his experience, it was not building and housing's practice to obtain a warrant.

{¶ 7} With respect to these particular inspections, Inspector Eaton did not remember what occurred when questioned on direct and cross-examination. In response to a question from the trial court asking him to discuss how he handled the inspection at 12500 Shaker Boulevard, Inspector Eaton testified as follows:

> Well, we're given an area to do, and that was part of the area. So[,] when we got to that building, like I said, you go to the vestibule, and it's, of course, secured. So[,] then you have to buzz in, and they let you in. You tell them what you're there for.

And on this particular case, yes, we were able to — they told us why — we told them why we were there. And they said, well there's your elevators.

And for that particular address that you just gave me [12500 Shaker Boulevard], we didn't have to gain access. They didn't have to have keys for us to get the machine room because they were already open and unlocked.

{¶ 8} Inspector Eaton recalled that with respect to 12500 Shaker, a maintenance person let him in and showed him to the machine room, which was unlocked. Inspector Eaton considered this person a maintenance person because he was taking out the trash and mopping floors. However, Inspector Eaton did not remember the person's name and did not ask if he had the authority to allow an elevator inspection.

{¶ 9} The trial court ultimately denied Appellant's motion to suppress, finding that Inspector Eaton obtained consent to search. The court focused primarily on Inspector Eaton's testimony that he obtained consent to search from a maintenance man, but also found that someone let him into the buildings and machine rooms for the elevators.

{¶ 10} The trial court went on to find that even if there was no consent, a warrantless administrative search of the premises was proper under these circumstances. Specifically, the trial court found that the only issue in dispute was whether Cleveland's ordinances were an adequate substitution for the warrant requirement. The trial court found that Cleveland's ordinances were sufficiently

circumscribed to pass constitutional muster in that they were limited in time, scope, and place.

{¶ 11} Appellant subsequently entered a plea of no contest to the charges, and the trial court found Appellant guilty. A sentencing hearing was held in January 2025. The trial court imposed fines of $15,000 on Count 1 of 2023-CRB-7888, and $10,000 each on Counts 1 of 2023-CRB-7891 and 2023-CRB-7893, for aggregate fines of $35,000. The court also imposed three years of community-control sanctions in each case. In addition, the following sanctions were ordered:

1. [Appellant] was not to sell, gift, or transfer the properties while on community control without approval of the court.

2. Court ordered a stay on all rent deposit matters pending before the court.

3. [Appellant] ordered to provide all tenants at each property with the contact information for the property manager, and a 24/7 contact for any issues regarding the properties.

4. [Appellant] ordered to remove graffiti on any of their properties in the city, specifically the property located at 12600 Shaker Boulevard.

5. [Appellant] must deposit all rent collections for the properties into a rent escrow account for any repairs needed to the properties. Appellant may access these funds by providing invoices or receipts for repairs, pest control, façade repairs;

6. [Appellant] must clean all of the properties and keep them free from all junk, debris, and dumping;

7. [Appellant] ordered to cut all grass and remove any shrubbery or overgrowth of shrubbery from any of the properties owned in the city.

8. [Appellant] ordered to obtain a certificate approving rental occupancy for all rental properties or apply for Cleveland's vacant homes registry to obtain exemptions and submit copies to the court.

9.  [Appellant] must register all rental properties within the city with Cleveland's rental registry.

10.  [Appellant] must comply with Cleveland's lead-safe ordinance by obtaining a lead-safe certificate for all rental properties it owns within the city or apply for applicable lead-safe exemptions and submit proof of same with the court.

11.  [Appellant] ordered to obtain façade registration for properties owned within the city and submit proof to the court.

12.  [Appellant] ordered to pay all outstanding property taxes or provide proof of a tax payment for all properties within the city and submit proof [to] the court.

13.  [Appellant] ordered to register a local agent in charge with [building and housing].

14.  [Appellant] ordered to establish a maintenance crew for the cited properties and provide information to the court.

15.  [Appellant] is ordered to provide a list of all units for each property located in the city in a spreadsheet format, listing if the unit is vacant or occupied, name of the tenant, and the amount of money being collected for rent.

16.  [Appellant] must submit a contract for a certified and bonded elevator company to make repairs to the elevators at the cited properties, including the costs and when elevator repairs will begin.

17.  [Appellant] must "close-out" over 20 violation notices open with the city with an inspector from [building and housing].

18.  [Appellant] is ordered to attend the upcoming trial court's landlord workshop.

19.  [Appellant] is ordered to submit a Tier III (30-day) maintenance and repair plan to the court on the 1st of each month.  The plan shall include dates when the property manager drives by owned properties to inspect so that no violation can occur, and when vacant properties are secured, when properties are scheduled for renovations,

inspections, and/or sale, provide updates on treatment for rodents, pests, and roaches, and attach permits when pulled.

20. [Appellant] is ordered to remain in communication, provided all required documents and information timely to the court while under community control.

{¶ 12} Appellant appeals raising the following assignments of error for our review:

### Assignment of Error No. 1

The trial court erred by failing to grant [Appellant's] motion to suppress.

### Assignment of Error No. 2

The trial court erred by imposing community-control sanctions upon a limited liability company.

### Assignment of Error No. 3

The trial court erred by imposing conditions of community control that are unwarranted by law, do not relate to rehabilitation or the underlying offense, and are not narrowly tailored and are overbroad.

### Assignment of Error No. 4

The trial court erred when it fined [Appellant] in excess of the maximum fine allowable for first degree misdemeanors.

## Law and Analysis

## Motion to Suppress

{¶ 13} For ease of analysis, we will address Appellant's assignments of error out of order. In the first assignment of error, Appellant argues that the trial court erred when it denied its motion to suppress. Specifically, Appellant argues that Inspector Eaton's warrantless search of the properties was not part of a

constitutionally valid administrative-inspection scheme and therefore, violated the Fourth Amendment of the United States Constitution's and the Ohio Constitution's prohibition against warrantless searches and seizures. Appellant further argues that the trial court abused its discretion in finding a valid consent to search, because the record did not support that finding. Finally, Appellant argues that even if there was consent to search, the unconstitutional inspection scheme rendered that consent invalid. We find Appellant's arguments lack merit.

**Standard of Review**

{¶ 14} A motion to suppress presents questions of law and fact, which require a mixed standard of review. *State v. Jackson*, 2022-Ohio-187, ¶ 27 (8th Dist.). The trial court, as the trier of fact, "'is in the best position to resolve questions of fact and evaluate witness credibility.'" *State v. Carson,* 2020-Ohio-3669, ¶ 9 (8th Dist.), quoting *State v. Curry*, 95 Ohio App.3d 93, 96 (8th Dist. 1994). An appellate court must accept those findings of fact "'if the findings are supported by competent, credible evidence.'" *Jackson* at *id.,* quoting *State v. Burnside*, 2003-Ohio-5372, ¶ 8.

{¶ 15} However, this court reviews the trial court's legal conclusions under the de novo standard of review and determines whether the established "facts satisfy the applicable legal standard." *State v. Miller,* 2018-Ohio-4898, ¶ 22 (8th Dist.), citing *Burnside* at *id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 (4th Dist. 1997). "A de novo review is an independent review, without any deference to the trial court's determination." *JTC Solutions, LLC v. New Age Consulting Serv.*,

2025-Ohio-5045, ¶ 12 (8th Dist.), citing *State v. Buehner*, 2021-Ohio-4435, ¶ 43 (8th Dist.).

**Warrantless Searches**

{¶ 16} Warrantless searches and seizures are prohibited under the Fourth and Fourteenth Amendments of the United States Constitution and under the Ohio Constitution. A warrantless search is "per se unreasonable unless an exception applies." *State v. Crawford*, 2020-Ohio-268, ¶ 13 (8th Dist.), citing *Katz v. United States*, 389 U.S. 347, 357 (1967). "'Evidence obtained from an unreasonable search or seizure must be suppressed.'" *Carson* at ¶ 11, quoting *State v. Thompson*, 2020-Ohio-486, ¶ 10 (8th Dist.), citing *Mapp v. Ohio*, 367 U.S. 643, 651 (1961).

{¶ 17} This rule is not limited to homes; it extends to commercial premises as well. *Strongsville v. Patel*, 2005-Ohio-620, ¶ 8 (8th Dist.), citing *Marshall v. Barlow's Inc.*, 436 U.S. 307, 312 (1978). "An owner or operator of a business thus has a reasonable expectation of privacy in commercial property." *Id.*, citing *Burger*, 482 U.S. at 699, citing *Katz* at 361. Nevertheless, a commercial property owner's expectation of privacy "'differs significantly from the sanctity accorded an individual's home.'" *AL Post 763 v. Ohio Liquor Control Comm.*, 82 Ohio St.3d 108, 113 (1998), quoting *Donovan v. Dewey*, 452 U.S. 594, 598-599 (1980). This lower expectation of privacy may allow a warrantless inspection of commercial property in certain circumstances. *Patel* at ¶ 10, citing *State v. Grays*, 2003-Ohio-6889, ¶ 11, citing *Burger* at 702.

{¶ 18} Once a defendant demonstrates that they were subjected to a warrantless search or seizure, "'the burden shifts to the State to establish that the warrantless search or seizure was constitutionally permissible.'" *State v. Brandau*, 2021-Ohio-3688, ¶ 11 (4th Dist.), quoting *State v. Conley*, 2019-Ohio-4172, ¶ 17 (4th Dist.), citing *State v. Banks-Harvey*, 152 Ohio St.3d 368, 373 (2018).

{¶ 19} Here, it is undisputed that the search was conducted without a warrant. Therefore, Appellee was required to establish that an exception to the warrant requirement applied. Appellant challenges the existence of an appropriate regulatory scheme that would justify a warrantless search and also the existence of consent to search. At the suppression hearing, Appellee presented testimony that Inspector Eaton obtained consent to search but did not address the warrantless administrative inspection requirements through his testimony.

## Consent Exception

{¶ 20} "An exception to the general rule prohibiting warrantless searches is a search by consent." *Cleveland v. Berger*, 91 Ohio App.3d 102, 107 (8th Dist. 1993), citing *State ex rel. Holcomb v. Wurst,* 63 Ohio App.3d 629 (12th Dist. 1989). This exception applies to commercial property, and a commercial property owner may consent to a search. *See Patel,* 2005-Ohio-620 (8th Dist.). Searches undertaken with valid consent do not violate the Fourth Amendment even when they are conducted without a warrant. *State v. Gartrell*, 2014-Ohio-5203, ¶ 60 (3d Dist.), citing *State v. Hartman*, 2012-Ohio-4694, ¶ 12 (9th Dist.), citing *State v. Roberts*, 2006-Ohio-3665, ¶ 98.

{¶ 21} Appellee may establish consent by showing that "there was (1) effective consent, (2) given voluntarily, (3) by a party with actual or apparent authority." *State v. Bowling*, 2010-Ohio-3595, ¶ 7 (8th Dist.), citing *United States v. Gonzales*, 121 F.3d 928, 938 (5th Cir. 1997).

{¶ 22} When consent is obtained from someone other than the owner, the government "'may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.'" *State v. Mack*, 2025-Ohio-4812, ¶ 41 (5th Dist.), quoting *United States v. Matlock*, 415 U.S. 164, 171-172 (1974).

> Common authority "is . . . not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their [co-inhabitants] might permit the common area to be searched."

*State v. Hayes*, 2025-Ohio-2483, ¶ 13 (3d Dist.), quoting *Matlock*, at 171, fn. 7.

{¶ 23} Furthermore, the Fourth Amendment is not violated "if [law enforcement] reasonably relied on the third party's apparent authority to consent." *Mack* at ¶ 44. "Apparent authority is judged by an objective standard." *State v. Boland*, 2008-Ohio-353, ¶ 16 (12th Dist.), citing *Illinois v. Rodriguez*, 497 U.S. 177, 188-189 (1990). The question is whether "'the facts available to the officer at the moment [would] warrant a man of reasonable caution in the belief that the consenting party had authority over the premises.'" *Id*. quoting *id*. at 188.

{¶ 24} The main question here is whether the person/person(s) who permitted Inspector Eaton to enter Appellant's properties had authority or apparent authority to consent to the search. Our review of the record reveals that Inspector Eaton conducted, on average, six hundred inspections per year; when entering a secure building it was his practice to buzz the management office, explain who he was and why he was there, and ask to inspect; and he did so with two of Appellant's properties when he conducted the inspection. While Appellant focuses on the maintenance person, our review of the testimony shows that Inspector Eaton only relied on the maintenance person for one property, 12500 Shaker Boulevard. The trial court asked him to describe how he obtained entry for that property, specifically. The question sparked Inspector Eaton's memory because he testified that he obtained entry to the two other properties the way he had previously described, by buzzing the property manager's office, identifying himself and why he was there, and that he was given access. He then testified that regarding 12500 Shaker Boulevard, he did not have to do that because the maintenance person granted him entry. Therefore, we find that there was competent, credible evidence in the record to establish that Inspector Eaton obtained effective and voluntary consent.

{¶ 25} Nevertheless, regardless of the means of entry, we must still determine whether the consent was obtained from someone in authority or apparent authority of the properties. Here, the evidence establishes that Inspector Eaton requested a limited inspection of the elevators and associated equipment. He was

permitted entry into two of the buildings by someone who responded to his ringing the buzzers for the property maintenance offices, and to the third by a maintenance person. Each of these individuals led him to the machine room and permitted him to inspect. Clearly, the property manager had authority to consent to the search, as someone who managed the property for the out-of-state owner. Further, we find that it was objectively reasonable for Inspector Eaton to believe that a maintenance person had apparent authority to allow the limited inspection of the elevator and machine room. There is no evidence in the record that Appellant had a particular privacy interest in the areas inspected to lead this court to believe that Inspector Eaton needed to secure the agreement of someone with more authority prior to proceeding with his inspections.

{¶ 26} Appellant cites, *United States v. Jones*, 335 F.3d 527 (6th Cir. 2003) for the proposition that a maintenance person does not have apparent authority to allow consent to enter. But the facts in *Jones* are readily distinguishable from the facts of this case. There, officers arrested Jones away from his home and asked for consent to search his residence. Jones refused consent. Officers then went to Jones' home and questioned a maintenance person and a person who was, at most, an overnight guest. The maintenance person allowed the officers to enter Jones' home, and then, when asked for his identification, allowed them to locate his duffel bag, which was located in a back room. On entering the back room, officers observed a weapon in plain view and secured a search warrant for Jones' home. The court found that the maintenance person could not override Jones' denial of consent and

that a person of reasonable caution would not have believed the maintenance person had apparent authority to consent to the search under those circumstances. Here, there is no evidence that the property owner refused consent prior to Inspector Eaton's arrival; thus, there was no reason for Inspector Eaton to doubt that the maintenance person had apparent authority to give him permission to inspect the elevator and the machine room.

{¶ 27} Finally, Appellant argues that the consent was invalid because an unconstitutional ordinance structure vitiates any consent. Appellant asserts that Cleveland's ordinances require a property owner to obtain an elevator certificate and that act requires them to submit to regular inspections. Appellant claims that the fact that a property owner is punished for failing to obtain such certification makes Cleveland's ordinances unconstitutional and vitiates any consent that is subsequently given. This argument lacks merit.

{¶ 28} We note that Appellant is basing its argument on ordinances that impose a penalty when a property owner refuses to consent to a search. However, refusal to consent did not occur in this case and Cleveland's ordinances are structured differently. Cleveland Cod.Ord. 3141.11 requires a property owner to permit an inspection and obtain a certificate when they are installing a new elevator, or altering or relocating an existing elevator. Once a property owner completes work on such a project, they are required to notify building and housing and allow a test of the elevator to ensure it meets the Ohio Basic Building Code ("OBBC"), the Ohio

Elevator Code, and Cleveland's building code.[3]  The inspections in this case were conducted under Cleveland Cod.Ord. 3141.14, which requires biannual inspections of all elevators in the city.

{¶ 29} Appellant was not cited for failure to allow an inspection or failure to obtain a certificate under Cleveland Cod.Ord. 3141.11.  Additionally, a property owner does not receive a certificate as a result of the biannual inspection under Cleveland Cod.Ord. 3141.14.  Therefore, Appellant's argument is not well taken.

---

[3] Cleveland Cod.Ord. 3141.11 provides:

(a)   Tests and Certificates of Operation required. The operation or use of any new, altered or relocated elevator, dumbwaiter, moving stairway, amusement device or special equipment is prohibited until such equipment has passed OBBC, the Ohio Elevator Code, and this Building Code, and a Certificate of Operation has been issued in accordance with Section 3141.12.

(b)   Tests of Elevators, Dumbwaiters and Moving Stairways. The person, firm or corporation installing, relocating, or altering an elevator, dumbwaiter, or moving stairway, shall notify the Commissioner, in writing, at least three (3) days before completion of the work and shall, in the presence of a representative of the Commissioner, subject the new, relocated, or altered portions of the equipment to tests required by OBBC, and the Ohio Elevator Code to show that such equipment meets the requirements specified.

(c)   Tests of Special Equipment and Amusement Devices. The person, firm, or corporation installing, relocating, or altering special equipment or amusement devices shall, in the presence of a representative of the Commissioner, make such tests as the Commissioner may prescribe in order to determine the safety of such equipment.

Cleveland Cod.Ord. 3141.12 states: "Issuing of Certificates. A Certificate of Operation shall be issued by the Commissioner when inspections and tests required by Section 3141.11 show that elevators, dumbwaiters, moving stairways, special equipment or amusement devices are installed in accordance with the provisions of OBBC, the Ohio Elevator Code and this Building Code."

{¶ 30} Accordingly, we find that the evidence supports the trial court's finding that Inspector Eaton had consent to search or inspect.

**Warrantless Administrative Inspection Requirements**

{¶ 31} We need not address the warrantless administrative inspection requirements because the inspections were supported by consent and based on the principle of constitutional avoidance.

{¶ 32} It is well established under Ohio law that courts "do not address constitutional issues unless it is absolutely necessary to do so." *State v. Graham*, 2019-Ohio-1485, ¶ 19 (6th Dist.), citing *Cleveland v. Williams*, 2018-Ohio-2937, ¶ 12 (8th Dist.). Furthermore, "'[c]onstitutional questions will not be decided until the necessity for a decision arises on the record before the court.'" *Id.,* quoting *State ex rel. Herbert v. Ferguson*, 142 Ohio St. 496 (1944), at paragraph two of the syllabus. "It is a long-standing principle that '[c]onstitutional judgments . . . are justified only out of the necessity of adjudicating rights in particular cases.'" *Epcon Communities Franchising, L.L.C. v. Wilcox Dev. Group, L.L.C.*, 2024-Ohio-4989, ¶ 17, quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 611 (1973), citing *Marbury v. Madison*, 5 U.S. 137, 178 (1803). "'Although the doctrine of constitutional avoidance tends to apply most often in the context of appeals, the doctrine applies equally to the trial courts.'" *Williams* at ¶ 13, quoting *Fulton v. Bd. of Zoning Appeals*, 2017-Ohio-971, ¶ 10 (8th Dist.). In the instant case, once the trial court found that the search was supported by a valid consent, it was not required to address the

constitutional question because it was not necessary to resolve the motion to suppress.

{¶ 33} Accordingly, we overrule the first assignment of error. We vacate the trial court's ruling on the constitutionality of Cleveland's ordinances because it was not necessary under these facts.

**Organizational Fines**

{¶ 34} This brings us to Appellant's fourth assignment of error, which challenges the trial court's imposition of fines. Preliminarily, Appellant did not provide this court with a transcript of the sentencing hearing, nor has Appellant argued that it objected to the sentence imposed by the trial court. When a party fails to object or notify the trial court of an alleged error, they are limited to arguing plain error on appeal. *State v. Davis*, 2012-Ohio-2499, ¶ 9 (8th Dist.). Therefore, we review the trial court's sentence for plain error.

{¶ 35} Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The appellant has the "burden of demonstrating that the outcome of the proceedings clearly would have been different but for the error." *Davis* at ¶ 9, citing *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph two of the syllabus. Even where the party does not raise plain error, this court has repeatedly found that "a sentence imposed contrary to law constitutes a plain error and we may review it for plain error." *State v. Dowdell*, 2022-Ohio-2956, ¶ 9 (8th Dist.), citing *State v. Whittenburg*, 2022-Ohio-803, ¶ 6 (8th Dist.), citing *State v. Walters*, 2016-Ohio-5783, ¶ 2 (4th Dist.).

{¶ 36} Here, the trial court's fines were obviously outside the bounds of the law. R.C. 2929.31 allows a trial court to impose a maximum fine of $5,000 for a misdemeanor of the first degree when the defendant is an organization. Rather than impose $5,000 on each count as permitted, the trial court imposed $15,000 on one count in 2023-CRB-7888, and $10,000 each on one count in 2023-CRB-7891 and 2023-CRB-7893. These fines were contrary to law because they exceeded the statutory maximum for a misdemeanor of the first-degree organizational defendant. Therefore, we sustain the fourth assignment of error, vacate the fines, and remand for resentencing.

{¶ 37} We decline to address Appellant's argument about how they suspect the trial court intended to impose the fines. Appellant argues that if the trial court intended to impose $5,000 on each count, it was precluded from doing so because the crimes were allied offenses of similar import. That issue is not before us.

**Community-Control Sanctions for Organizations**

{¶ 38} In the second assignment of error, Appellant argues that the trial court erred when it imposed community-control sanctions on a limited liability company. Appellant asserts that R.C. 2929.31 establishes sentencing guidelines for organizations and that that statute prescribes the only penalties allowed under the law. We disagree.

{¶ 39} R.C. 2929.31(A) states, in pertinent part:

Regardless of the penalties provided in sections . . . 2929.24 to 2929.28 of the Revised Code, an organization convicted of an offense pursuant

to section 2901.23 of the Revised Code shall be fined in accordance with this section.

{¶ 40} R.C. 2929.24 through 2929.28 are misdemeanor penalty statutes. R.C. 2929.31 can be read to mean that without considering the penalties imposed in those statutes, an organizational defendant shall be *fined* according to R.C. 2929.31. *See State v. Kyles,* 2024-Ohio-5038, ¶ 13 (finding that "'regardless of' means 'in spite of' or 'without taking into account'" quoting Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/regardless%20 of (accessed Sept. 25, 2024) [https://perma.cc/6AU3-85S9]). Accordingly, the plain language of the statute describes the fines available to a sentencing court when the defendant is an organization but does not preclude imposition of other penalties.

{¶ 41} As this court noted in *Cleveland v. Pentagon Realty, L.L.C.*, 2019-Ohio-3775 (8th Dist.), community-control sanctions imposed to enforce Cleveland's building code meet the misdemeanor sentencing goal of protecting the public from future crime. *Id.* at ¶ 8, citing R.C. 2929.21.

> To achieve these purposes, "'the sentencing court shall consider the impact of the offense on the victim, the need to change the offender's behavior, the need to rehabilitate the offender, and the desire to make restitution to the victim and/or the public.'"

*Id.* at ¶ 10, quoting *Cleveland v. Go Invest Wisely, L.L.C.*, 2011-Ohio-3047, ¶ 8 (8th Dist.), quoting *State v. Downie*, 2009-Ohio-4643, ¶ 45 (7th Dist.), citing *In re Slusser*, 140 Ohio App.3d 480, 487 (3d Dist. 2000).

{¶ 42} Certainly, an organization should not be exempt from these sentencing goals that can only be accomplished through community-control

sanctions. The ultimate goal for the trial court in these cases is to ensure the property owner corrects "the violation and [brings] the property into compliance with all building codes, rather than punish the defendant for misconduct." *Id.* at ¶ 9, citing *Cleveland v. Schornstein Holdings, L.L.C.*, 2016-Ohio-7479, ¶ 19 (8th Dist.), citing *Go Invest Wisely, L.L.C.* at ¶ 20.

{¶ 43} This court explicitly found that the broad discretion given to trial courts to meet the misdemeanor sentencing considerations allows the court to impose any sanction under R.C. 2929.24 to 2929.28 "unless a specific sanction is either required or precluded by law . . . including fines, jail time, and community-control sanctions for a maximum of five years." *Id.* at ¶ 10-11, citing *Schornstein Holdings, L.L.C.* at *id.*, and *N. Olmsted v. Rock*, 2018-Ohio-1084, ¶ 32 (8th Dist.); R.C. 2929.25(A)(1).

{¶ 44} Therefore, the trial court was acting within its power by imposing community-control sanctions and there was no error, let alone plain error. Accordingly, the second assignment of error is overruled.

**Community-Control Conditions**

{¶ 45} Although we have found that it was within the trial court's authority to impose community-control sanctions, Appellant's third assignment of error challenges whether those community-control sanctions meet the requirements of misdemeanor sentencing to rehabilitate the offender and prevent future crime. Appellant's arguments are well taken, in part.

{¶ 46} Because courts have broad discretion in imposing community-control sanctions, we review those decisions for an abuse of discretion. *State v. Moore*, 2023-Ohio-1819, ¶ 8 (8th Dist.), citing *State v. Cooper*, 2016-Ohio-8048, ¶ 31 (8th Dist.), citing *State v. Talty*, 2004-Ohio-4888, ¶ 10. This discretion is not without limits. *Talty* at ¶ 11, citing *State v. Jones*, 49 Ohio St.3d 51, 52 (1990). A community-control sanction should "reasonably relate to the offense at issue, further[] the twin goals of rehabilitation and justice, and [should] not cause a greater deprivation of liberty than is necessary to achieve those penological goals." *State v. Chapman*, 2020-Ohio-6730, ¶ 17, citing *Jones* at 53.

{¶ 47} Furthermore, this court has found that "'a trial court has the discretion to "impose additional conditions aimed at preserving the interest of justice, protection of the community, and the rehabilitation of the offender."'" *Cleveland v. Sopjack,* 2024-Ohio-6018, ¶ 32 (8th Dist.), citing *Pentagon Realty*, 2019-Ohio-3775, at ¶ 11, quoting *Rock*, 2018-Ohio-1084, at ¶ 11 (8th Dist.), citing *Lakewood v. Krebs*, 150 Ohio Misc.2d 1, 15 (M.C. 2008). When looking at other restrictions that are tailored to ensure the rehabilitation of the offender, "courts should take particular care to ensure that the sanctions are appropriately crafted to meet a proper rehabilitative purpose." *Chapman* at ¶ 19. Finally, these conditions "'must not be overbroad and must reasonably relate to the goals of community control." *Sopjack* at ¶ 32. However, as with the two previous assignments of error, we review the trial court's ruling for plain error because the record before us does

not establish that Appellant objected to the court's community-control sanctions on the record.

{¶ 48} In determining whether a community-control sanction meets the goals of "rehabilitation, administering justice, and ensuring good behavior," the courts must consider,

"'whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to the conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation.'"

*Moore*, 2023-Ohio-1819, at ¶ 10 (8th Dist.), quoting *Talty* at ¶ 12, quoting *Jones* at 53.

{¶ 49} "'All three prongs of the *Jones* test must be satisfied for the reviewing court to find that the trial court did not abuse its discretion.'" *Sopjack* at ¶ 33, quoting *Pentagon Realty* at ¶ 13, citing *Solon v. Broderick*, 2018-Ohio-4900, ¶ 8 (8th Dist.).

{¶ 50} We are hampered in our analysis because we do not have the transcript for the sentencing hearing. However, in its journal entry, the trial court noted that a former tenant of 12701 Shaker Boulevard testified that there had been problems with the elevator since Appellant took ownership in 2022. The requirement that Appellant provide tenants with the name of a property manager is reasonably related to rehabilitating the offender by addressing its responsiveness to elevator problems; has some relationship to Appellant's convictions for violations of the elevator provisions of the building code; and is reasonably related to future

violations of the elevator code by ensuring Appellant receives prompt notice of issues with the elevators. The same is true for the requirement that Appellant provide the name of a local agent to building and housing.

{¶ 51} Additionally, the requirement to attend the court's landlord workshop also is appropriate. A landlord has an obligation to "[c]omply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety," and "[m]aintain in good and safe working order and condition all . . . elevators, supplied or required to be supplied by the landlord." R.C. 5321.04(A)(1) and (4). Attendance at the workshop meets the requirements of community-control sanctions regarding rehabilitation, relationship to the violations, and prevention of future crime. Moreover, the requirement that Appellant hire a certified and bonded elevator company to make repairs to the elevators is reasonably related to rehabilitating the offender and remediating the conditions of the property; is directly related to Appellant's charges; and is reasonably related to the prevention of future violations.

{¶ 52} Next, the trial court ordered a stay of all rent deposit cases pending before the court. This order may address other cases filed in the housing court where Appellant's tenants have deposited their rent into an escrow account as provided in R.C. 5321.07. It is within the inherent power of a court to "stay proceedings pending resolution of potentially dispositive developments." *Guerriero v. Dept. of Rehab. & Corr.*, 2002-Ohio-5149, ¶ 16 (11th Dist.), citing *State v. Hochhausler*, 76 Ohio St.3d

455, 464 (1996); *State ex rel. Smith v. Friedman*, 22 Ohio St.2d 25 (1970). Because those cases are not before us, we will not address this aspect of the court's ruling.

{¶ 53} The trial court's remaining community-control sanctions can be grouped into financial, property, and registration conditions. These conditions fail to meet one or more of the *Jones* requirements, and therefore the trial court abused its discretion in imposing them.

{¶ 54} The financial conditions include the requirement (1) prohibiting selling, transferring, or gifting the property; (2) depositing all rent collections into a rent escrow account; and (3) paying all outstanding property taxes or providing proof of tax payments. There is no relation between the convicted offenses and these conditions. Appellant's failure to maintain its elevators could range from a variety of causes, including financial. However, there is no evidence in the record that Appellant failed to pay taxes, mismanaged rents generally, or that a moratorium on the transfer of the property was necessary to rehabilitate the offender. Therefore, these sanctions were an abuse of discretion. Because we find that the trial court abused its discretion by imposing these sanctions, we need not address Appellant's challenge to the trial court's ability to impose them.

{¶ 55} The property conditions include (1) removing graffiti, (2) cleaning all properties and keeping them free from junk, debris, and dumping; (3) cutting all grass and removing any shrubbery or overgrowth of shrubbery; (4) establishing a maintenance crew; (5) closing out all open city violation notices; and (6) submitting a maintenance and repair plan on the 1st of each month. While we are mindful that

this property presented a nuisance in the community, we have to look at these conditions in relationship to the violations. These conditions are not related to the elevator-code violations. Further, the maintenance crew and monthly reporting requirements were clearly introduced to address all code violations and not just the elevator issues. The record does not establish that Appellant needs to hire a maintenance crew or report monthly to address the elevator repairs. Therefore, the trial court's sanctions are overbroad.

{¶ 56} Notably, a trial court's attempt to address outstanding notice of violations is an improper use of community-control sanctions, circumventing due process and the notice provisions of the Cleveland Codified Ordinances when the criminal conduct is unrelated to the sanctions imposed. *Cleveland v. Hero Homes JV2 LLC*, 2025-Ohio-4585, ¶ 42 (8th Dist.).

{¶ 57} This case is similar to, but distinguishable from *Cleveland v. Southwest Invest., LLC*, 2024-Ohio-1271 (8th Dist.). In that case, this court addressed community-control conditions that applied to the defendant's other, uncited, properties within the city.

{¶ 58} Similarly, the trial court here attempts to expand its reach in an elevator-code-violation case to address every possible violation at the properties in question. Even though the properties — unlike the properties in *Southwest Invest.* — are directly subject to the court's authority in this case, the trial court's order serves to preemptively circumvent Cleveland's established policies to address code violations, which include giving the property owner an opportunity to correct the

violations and/or appeal the notice prior to Appellee filing criminal charges. Furthermore, if Appellee wanted to file criminal charges on the open violations, it could have done so; in fact, the trial court noted that there were other criminal cases pending against Appellant in its journal entry.

{¶ 59} The trial court's attempt to address registration conditions is similarly overbroad and beyond the scope of its authority with respect to the violations in this case. These conditions include (1) obtain a certificate approving rental occupancy and/or sign up for Cleveland's vacant home registry; (2) comply with Cleveland's lead-safe ordinance; (3) obtain façade registration; (4) provide a list of all units for each property located in the city, with the vacant units, the name of the tenant of each occupied unit, and the amount of rent; and (5) provide all required documents to the court. None of these requirements are reasonably related to Appellant's Cleveland's elevator-code violations, and thus the trial court abused its discretion when it imposed these sanctions.

{¶ 60} Based on the foregoing, Appellant's third assignment of error is sustained in part and overruled in part, as described above. Furthermore, we vacate the community-control sanctions that fail to meet the *Jones* test, specifically:

- Prohibiting the sale, transfer, or gifting of the property;

- Deposit all rent collections into a rent escrow account;

- Pay all outstanding property taxes or provide proof of payments;

- Remove graffiti;

- Clean all properties and keep them free from junk, debris, and dumping;

- Cut all grass and remove any shrubbery or overgrowth of shrubbery;

- Establish a maintenance crew;

- Close all open city violation notices;

- Submit a maintenance and repair plan on the first of each month;

- Obtain a certificate approving rental occupancy or sign up for Cleveland's vacant home registry;

- Comply with Cleveland's lead safe ordinance;

- Obtain façade registration;

- Provide a list of all units for each property located in the city, with the vacant units, the name of the tenant of each occupied unit, and the amount of rent; and

- Provide all required documents to the court.

{¶ 61} In summary, we affirm the trial court's decision denying Appellant's motion to suppress based on consent; overrule and vacate the finding addressing the constitutionality of Cleveland's ordinances; vacate the imposed fines and remand for resentencing; and vacate the community-control sanctions as listed above.

{¶ 62} Judgment affirmed in part, reversed and vacated in part, and remanded for resentencing.

It is ordered that the parties split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court, Housing Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
EMANUELLA D. GROVES, PRESIDING JUDGE

DEENA R. CALABRESE, J., CONCURS;
SEAN C. GALLAGHER, J., CONCURS (WITH SEPARATE OPINION)


SEAN C. GALLAGHER, J., CONCURRING:

{¶ 63} I fully concur with the majority opinion. I write to reiterate my concerns with some of the "overreach" methods employed by the Cleveland Housing Court when imposing community-control sanctions. As I previously expressed in *Cleveland v. Johnson*, 2025-Ohio-1731, ¶ 23-29 (S. Gallagher, J., concurring):

> In writing separately, it is not my intent to question the motives of the housing court or its staff. I presume they are trying to serve the best interests of landowners, residents, and the city. My observations from reviewing this and similar cases reveal concerns with some of the methods employed by the court.

> The Cleveland Housing Court came into existence on April 2, 1980, through an act of the General Assembly. *See generally*, R.C. 1901.01 through 1901.331. The court was created not to be punitive, but to assist homeowners, residents, and the municipality in dealing proactively with a myriad of housing issues that, at the time, were impacting major cities in Ohio and continue to be at issue to this date. *See generally*, Frederic P. White, The Cleveland Housing Court Act: New Answer to an Old Problem, 30 Clev.St.L.Rev. 41 (1981).

> While code enforcement was a component of the court's duties, the approach initially centered on helping to improve the housing stock.

The general duties of the Housing Specialist include visiting premises to examine the extent of needed repairs, interviewing owners and tenants to ascertain what can be done to effect such repairs and, from time to time, revisiting the property to examine the progress for work being done. Primary duties of the specialist, however, consist of steering homeowners to various loan and grant programs to secure funds for necessary repairs.

*Id*. at 46. The original spirit of the court's purpose was to support resolution of housing problems in a holistic manner over purely criminal enforcement. *See id*.

It is undeniable that code enforcement has been a necessary component of the court's duties. Yet over the court's 45-year existence, a culture of "overreach" has developed by the generally broad brush the Cleveland Housing Court uses in imposing community-control sanctions on housing code violations.    [Footnote omitted. *See Cleveland v. Sopjack*, 2024-Ohio-6018, ¶ 60-62 (8th Dist.); *Cleveland v. Pentagon Realty, L.L.C.*, 2019-Ohio-3775, ¶ 17 (8th Dist.)]

. . .

. . . It has generally been concluded that the housing court may not include conditions on other properties as part of the community-control sanctions imposed on violations pertaining to a subject property identified in the charging instrument. *Cleveland v. City Redevelopment LLC*, 2024-Ohio-5213, ¶ 12 (8th Dist.). . . .

. . . The only properties over which the housing court has authority to impose restrictions are those identified in the charging document, the property or properties underlying the issued violations. *Id*. Further, concerns can be raised that even within a single property identified in the charging instrument, the community-control sanction should be limited to the violation at hand and is not a green light to address uncharged violations where no due process has been afforded the landowner. This practice raises concerns about the separation of powers where the judicial branch assumes the role of the executive in uncovering new violations through the guise of community-control sanctions and then compelling remediation. Uncovering violations is for the housing inspectors at City Hall, not the judiciary. *State v. Hacker*, 2023-Ohio-2535, ¶ 14, quoting *State ex rel. Dann v. Taft*, 2006-Ohio-1825, ¶ 56 ("The [separation-of-powers] doctrine 'requires that each branch of a government be permitted to exercise its

constitutional duties without interference from the other two branches of government.'").

{¶ 64} As the majority finds in the present case, most of the community-control sanctions imposed are overbroad and beyond the scope of the trial court's authority with respect to the underlying violations. Therefore, they must be vacated. I agree with the remaining disposition of the assignments of error as set forth in the majority opinion.